IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

      *Plaintiff*,

v.

JOSE ALBERTO RAMIREZ,

      *Defendant*.

Case No. 0:26-cr-00042-DWF-JFD

**DEFENDANT'S MOTION TO DISMISS COUNT 1 OF THE INDICTMENT
UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(B)(v)
FOR FAILURE TO STATE AN OFFENSE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………..ii

INTRODUCTION……………………………………………………………….............…1

BACKGROUND………………………………………………………………….....3

ARGUMENT……………………………………………………………………………..4

I.     THE INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE THE
       QUOTED STATEMENTS DO NOT COMMUNICATE A "THREAT TO
       INJURE" AS A MATTER OF LAW…………………………………………………....6

       A. A "threat to injure" under § 875(c) requires a communicated prospect of
          unlawful physical harm …...…………………………………………..……………....6

       B. Comparable "true threat" cases confirm the Government's theory is not a
          close call…………………………………………………………………….......7

       C. Because the indictment quotes the words and those words do not
          threaten injury, dismissal is appropriate at the pleading stage……………………....12

II.    THE INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE IT DOES
       NOT PLAUSIBLY ALLEGE THE REQUIRED MENTAL STATE…………………14

       A. *Elonis* requires a culpable mental state tied to the threatening nature
          of the communication; *Counterman* sets the constitutional floor…………………14

       B. The indictment's stacked mens rea recitation is conclusory and cannot
          cure the absence of a threatening communication…………………..……….………15

       C. The content alleged forecloses any plausible inference of purpose,
          knowledge, or recklessness as to a threat of violence……………..……………...16

       D. Because the indictment does not plausibly allege the required mens rea as
          to a threat of violence, Count 1 must be dismissed…………………………........16

CONCLUSION……………………………………………………………………….....17

i

# TABLE OF AUTHORITIES

*Counterman v. Colorado*,
    600 U.S. 66 (2023)……………………………………………………… *passim*

*Doe v. Pulaski Cnty. Special Sch. Dist.*,
    306 F.3d 616 (8th Cir. 2002) (en banc)……………………………….........…7

*Elonis v. United States*,
    575 U.S. 723 (2015)…………………………………………………*passim*

*Hamling v. United States*,
    418 U.S. 87 (1974)..……………………………………………………… 2, 5

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)…………………………………………………….....9

*Russell v. United States*,
    369 U.S. 749 (1962)……………………………………………….............2

*United States v. Alkhabaz*,
    104 F.3d 1492 (6th Cir. 1997)………………………………………………..5

*United States v. Bagdasarian*,
    652 F.3d 1113 (9th Cir. 2011)……………………………………………….9, 10

*United States v. Barcley*,
    452 F.2d 930 (8th Cir. 1971)………………………………………………..*passim*

*United States v. Bellrichard*,
    779 F. Supp. 454 (D. Minn. Nov. 27, 1991)……………………………...……9, 10

*United States v. Bellrichard*,
    994 F.2d 1318 (8th Cir. 1993)……………………………………….………5, 8, 13

*United States v. Dierks*,
    978 F.3d 585 (8th Cir. 2020) ………………………………………...8, 10, 11

*United States v. Ferro*,
    252 F.3d 964 (8th Cir. 2001)……………………………………………………6

*United States v. Ivers*,
    990 F.3d 993 (8th Cir. 2021)……………………………….......…………7, 10, 11

*United States v. Just*,
    74 F.3d 902 (8th Cir. 1996)………………………….………....…........6, 13

*United States v. Kelner*,
    534 F.2d 1020 (2d Cir. 1976)……………………………………………7

*United States v. Kirkendoll*,
    2023 U.S. App. LEXIS 5973 (8th Cir. Mar. 14, 2023) (unpublished)……...…..8, 11

*United States v. LaFontaine*,
    847 F.3d 974 (8th Cir. 2017)……………………………………….......8-10

*United States v. Leveke*,
    38 F.4th 662 (8th Cir. 2022)……………………………………………..8

*United States v. Lincoln*,
    589 F.2d 379 (8th Cir. 1979)……………………………………………8

*United States v. Mabie*,
    663 F.3d 322 (8th Cir. 2011)…………….………………………….........7, 9

*United States v. Nabors*,
    45 F.3d 238 (8th Cir. 1995)………………………………………..........6

*United States v. Nicklas*,
    713 F.3d 435 (8th Cir. 2013)..……………………….………………*passim*

*United States v. O'Dwyer*,
    443 F. App'x 18 (5th Cir. 2011)………………………………….……9, 10

*United States v. Whitfield*,
    31 F.3d 747 (8th Cir. 1994)……………………...………….……….5, 13

*Virginia v. Black*,
    538 U.S. 343 (2003)………………………………………..*passim*

*Watts v. United States*,
    394 U.S. 705 (1969) (per curiam)..……………………………….*passim*

iii

**Statutes and Rules**

18 U.S.C. § 875(c)……………………………………………………………….*passim*

Cal. Penal Code § 187(a)……………………………………………………………3

Fed. R. Crim. P. 12(b)(3)(B)(v)……………………………………………...……6, 13, 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>JOSE ALBERTO RAMIREZ,<br><br>    *Defendant*. | Case No. 0:26-cr-00042-DWF-JFD<br><br>**Defendant's Motion to Dismiss the Indictment for Failure to State an Offense** |

## **INTRODUCTION**

This case presents a narrow question of law that can be resolved from the face of the indictment: whether the three communications the Government quotes verbatim constitute an interstate "threat to injure" within the meaning of 18 U.S.C. § 875(c). They do not. The indictment pleads obnoxious, hostile, and offensive language, but it does not plead a threatened injury or a serious expression of intent to commit unlawful violence—the defining requirement of a constitutionally punishable "true threat." 18 U.S.C. § 875(c); *Virginia v. Black*, 538 U.S. 343, 359 (2003).

The Government's theory instead depends on importing "violence" from surrounding circumstances and from other people's explicit threats. Section 875(c) does not permit that move. It does not criminalize nonviolent speech because the broader moment is volatile, and the First Amendment requires careful line-drawing so that criminal liability does not turn on atmosphere, listener reaction, or guilt by association. *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam).

The indictment rests on three messages sent within approximately two minutes:

1

| Time | Message |
|---|---|
| **6:01 a.m.** **(voicemail)** | "What up [Victim A's first name]? You bitch ass nigga. Your day will come nigga. Bitch ass nigga." |
| **6:02 a.m.** **(text message)** | "[Victim A's full name], yahahahahahaha bitch ass nigga, I know where your mom lives bro. And your dad. And your kids buddy." |
| **6:03 a.m.** **(text message)** | "Get home safe and fast." |

Those words may be vile or offensive. But under no reasonable construction do they constitute a "threat to injure." They identify no violent act, no bodily harm, no weapon or method, no timeframe, and no stated consequence. At most, they communicate hostility and an intrusive assertion of knowledge about family members' locations. They do not convey a serious expression of intent to commit unlawful violence.

This case does not turn on disputed facts. Where, as here, the Government pleads the operative language in full, the Court determines from the four corners of the indictment whether the communication, as alleged, satisfies the statutory element. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *Russell v. United States*, 369 U.S. 749, 764–65 (1962). Labeling these communications a "threat to injure" cannot substitute for pleading words that actually threaten injury.

The words are fixed by the indictment, and they do not communicate a threat to injure under any reasonable reading. Because Count 1 does not allege a communication containing a "threat to injure," it fails to state an offense under 18 U.S.C. § 875(c) and must be dismissed.

2

## BACKGROUND

This case began on January 28, 2026, when the Government filed a criminal complaint in the District of Minnesota supported by an affidavit from an FBI Special Agent. (Dkt. 1). The complaint alleges a violation of 18 U.S.C. § 875(c) based on communications allegedly sent on or about January 15, 2026. (*Id.*).

The affidavit places the alleged communications in a broader factual context arising from events on January 14, 2026 in North Minneapolis. (*Id.*). It states that after federal agents responded to a shooting, a large crowd gathered and agents were forced to leave the area due to safety concerns. (*Id.*). The affidavit further alleges that during the unrest, identifying information for federal personnel—including phone numbers, email addresses, and home addresses—was stolen and later disseminated online. (*Id.*).

The affidavit further recounts that, following dissemination of that information, federal personnel and their family members received numerous communications, including communications from twenty-three separate senders, some of which contained explicit threats of violence. (*Id.* at 4–5). It provides examples, including messages referencing a firebomb and one stating "Gotcha Bitch!!!187," [1] and describes a broader volume of calls, emails, and messages received in the following days.

Mr. Ramirez was arrested in the Northern District of Illinois and made his initial appearance in the District of Minnesota on February 10, 2026. (Dkt. 11). The Court ordered him detained, and a formal detention order followed on February 11, 2026. (Dkt. 13).

---

[1] "187" is a reference to California Penal Code § 187, which defines murder, and is commonly used as shorthand for homicide. *See* Cal. Penal Code § 187(a).

3

On February 12, 2026, a grand jury returned a one-count indictment charging Mr. Ramirez with interstate transmission of a threat to injure, in violation of 18 U.S.C. § 875(c). (Dkt. 16). The indictment alleges that at approximately 6:01 a.m., 6:02 a.m., and 6:03 a.m. on January 15, 2026, Mr. Ramirez transmitted one voicemail and two text messages to "Victim A," and sets out those communications verbatim. It further recites that Mr. Ramirez acted "with the purpose of issuing a threat," "with knowledge that the communication would be viewed as a threat," and "consciously disregarding a substantial and unjustifiable risk that the communication would be viewed as a threat."

Mr. Ramirez was arraigned on March 6, 2026, entered a plea of not guilty, and remains detained pending trial. (Dkts. 25–27, 32).

## **ARGUMENT**

Section 875(c) criminalizes the knowing interstate transmission of a communication containing a threat to injure the person of another or to kidnap another. 18 U.S.C. § 875(c); *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013). Because the statute regulates speech, it is constrained by the First Amendment. Only "true threats"—communications conveying a serious expression of an intent to commit unlawful violence—fall outside constitutional protection. *Virginia v. Black*, 538 U.S. 343, 359 (2003). The inquiry turns on what the communication conveys, not on the use of crude, offensive, or heated language. *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam).

Section 875(c) further requires a culpable mental state tied to the threatening character of the communication. At a minimum, the First Amendment requires proof that the defendant was aware of and consciously disregarded a substantial risk that the communication

4

would be understood as a threat of unlawful violence. *Counterman v. Colorado*, 600 U.S. 66, 74–75 (2023). Liability may not rest on negligence; it is not enough that a reasonable observer might interpret the statement as threatening. *Elonis v. United States*, 575 U.S. 723, 737–38 (2015).

An indictment may track the statutory language and still fail as a matter of law. Although an indictment ordinarily suffices if it states the elements and provides notice, *Hamling v. United States*, 418 U.S. 87, 117 (1974), that principle does not permit the Government to plead words that, as alleged, do not satisfy the element it invokes. Where, as here, the Government sets out the charged communications verbatim, the sufficiency inquiry turns on the words themselves. Accepting the allegations as true, the indictment survives only if those words are capable of communicating a threat to injure or kidnap under a reasonable construction. *See* 18 U.S.C. § 875(c); *United States v. Alkhabaz*, 104 F.3d 1492, 1495–96 (6th Cir. 1997) (holding that discussions of violence do not constitute threats absent a communicated expression of intent to inflict harm).

The Eighth Circuit's reasonable-recipient standard operates at that same threshold. "[I]f a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury." *United States v. Whitfield*, 31 F.3d 747, 749 (8th Cir. 1994) (quoting *United States v. Bellrichard*, 994 F.2d 1318, 1323–24 (8th Cir. 1993)). That rule presupposes language capable of conveying a threat of unlawful violence. Where the words themselves cannot, under any reasonable construction, be understood to communicate a threat to injure, the issue does not reach the jury.

5

Because the communications alleged here cannot, under any reasonable construction, be understood to communicate a threat to injure within the meaning of § 875(c), the defect appears on the face of the indictment. Count 1 therefore fails to state an offense and must be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

I.   **THE INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE THE QUOTED STATEMENTS DO NOT COMMUNICATE A "THREAT TO INJURE" AS A MATTER OF LAW**

Section 875(c) requires the Government to allege a communication that itself contains a threat to injure or kidnap, together with a culpable mental state as to the threatening character of the communication. 18 U.S.C. § 875(c); *Counterman v. Colorado*, 600 U.S. 66, 74–75 (2023). Where, as here, the indictment sets out the charged statements verbatim, that requirement rises or falls on the words themselves.

At this stage, the question is not whether the Government might prove a violation of § 875(c), but whether the indictment alleges one. *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001). Accepting the allegations as true, an indictment survives only if, under a reasonable construction, the words alleged state the offense. *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995); *United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996). Where the words themselves do not communicate a threat under any reasonable construction, dismissal at the pleading stage is required.

A.   **A "threat to injure" under § 875(c) requires a communicated prospect of unlawful physical harm.**

Section 875(c), as limited by the First Amendment, reaches only communications that convey a serious expression of an intent to inflict unlawful physical harm. *Virginia v.*

6

*Black*, 538 U.S. 343, 359 (2003); *see also United States v. Barcley*, 452 F.2d 930, 933 (8th Cir. 1971). It does not encompass statements that are merely abusive, hyperbolic, conditional, or susceptible to non-threatening interpretations. *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam); *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976).

A true threat exists only where the speaker communicates a serious expression of intent to commit unlawful violence. *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013). The inquiry asks whether a reasonable recipient, familiar with the context, would understand the statement as such an expression. *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 623–24 (8th Cir. 2002) (en banc).

Where language is ambiguous or susceptible to non-threatening interpretations, it does not establish a communicated threat to injure absent contextual allegations that resolve that ambiguity. *Barcley*, 452 F.2d at 933. That limitation controls here. The indictment alleges no facts that transform the quoted language into a communicated prospect of unlawful harm. As pleaded, the statements cannot, under any reasonable construction, be understood as a threat to injure within the meaning of § 875(c).

### B. **Comparable "true threat" cases confirm the Government's theory is not a close call.**

#### i. *Communications that constitute true threats.*

In cases finding "true threats," the communication itself conveys a serious expression of intent to commit unlawful physical harm. *See, e.g., United States v. Ivers*, 990 F.3d 993, 996–97 (8th Cir. 2021) ("You don't know the 50 different ways I planned to kill her"); *United States v. Mabie*, 663 F.3d 322, 329 (8th Cir. 2011) ("I'm going to blow your head

7

off"); *United States v. LaFontaine*, 847 F.3d 974, 977–78 (8th Cir. 2017) ("these judges … are gonna get their fin' throats cut"); *United States v. Leveke,* 38 F.4th 662, 672 (8th Cir. 2022) ("I'm angry enough to pull a mass shooting"); *United States v. Dierks*, 978 F.3d 585, 589 (8th Cir. 2020) ("I'll f you up seriously … I'll beat your ass … I promise"); *Nicklas*, 713 F.3d at 437 ("for each day I do not receive the deed to my property … an FBI agent will die"); *United States v. Bellrichard*, 994 F.2d 1318, 1321–22 (8th Cir. 1993) ("you'll be dead in less than seven months"); *United States v. Kirkendoll*, 2023 U.S. App. LEXIS 5973, at *2 (8th Cir. Mar. 14, 2023) (per curiam) (unpublished) ("U gone die … I don't know where U lay yo head at"); *United States v. Lincoln*, 589 F.2d 379, 382 (8th Cir. 1979) (letter threatening to kill federal judges).

These cases share a common feature: the threatening meaning arises from the words themselves. The speaker identifies violence—death, shooting, physical assault, or comparable harm—and communicates it as a consequence directed at the target. No inference is required to supply the threat.

That feature defines the pleading inquiry here. Where, as here, the indictment quotes the statements verbatim, the charge stands only if those words themselves communicate a threat to injure. *See* 18 U.S.C. § 875(c); *Nicklas*, 713 F.3d at 440.

### ii.   *Communications that do not constitute true threats.*

By contrast, § 875(c) does not reach statements that, even when referencing violence, fail to communicate a serious expression of intent to inflict unlawful harm. In *Barcley*, the Eighth Circuit held that the statement "you are the first S.O.B. that will go" did not constitute a true threat, despite its reference to harm directed at a specific individual. 452

8

F.2d at 931–32. Likewise, in *United States v. Bellrichard*, 779 F. Supp. 454, 460–61 (D. Minn. 1991), aff'd in relevant part, 994 F.2d 1318, 1321–22 (8th Cir. 1993), the court granted judgment of acquittal on one count based on the statement "God will blow up both those judges' houses."

The same principle governs other decisions. *Watts*, 394 U.S. at 706–08 ("If they ever make me carry a rifle…"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902, 927–29 (1982) ("we're gonna break your damn neck"); *United States v. Bagdasarian*, 652 F.3d 1113, 1117–19 (9th Cir. 2011) ("Obama fk the niggar, he will have a 50 cal in the head soon"); *United States v. O'Dwyer*, 443 F. App'x 18, 19–20 (5th Cir. 2011) (per curiam) ("suppose I become 'homicidal' … a number of scoundrels might be at risk if I do become homicidal").

Taken together, these cases mark the boundary § 875(c) enforces. Language invoking violence, hostility, or menace is not enough. The communication must itself convey a serious expression of intent to inflict unlawful physical harm. Where it does not, the statute does not apply.

### iii.    The indictment's three quoted communications do not contain a threat to injure.

Measured against the cases discussed above, the defect in this indictment is clear. In cases sustaining § 875(c) convictions, the communication itself expresses unlawful violence in concrete terms. The speaker says he will "blow your head off," *Mabie*, 663 F.3d at 329; that an agent "will die," *Nicklas*, 713 F.3d at 437; that judges are "gonna get their f***in' throats cut," *LaFontaine*, 847 F.3d at 977–78; or that he has planned "50 different ways" to

9

kill the victim, *Ivers*, 990 F.3d at 996–97. In each instance, the threatening meaning arises from the words themselves, which expressly communicate physical harm.

Nothing comparable appears here. None of the three quoted statements communicates violence, describes a harmful act, or states that the speaker will injure anyone. This case therefore aligns not with *Mabie*, *Nicklas*, *LaFontaine*, or *Ivers*, but with the decisions rejecting liability where the language, though hostile or unsettling, fails to communicate a serious expression of unlawful physical harm. *See Barcley*, 452 F.2d at 931–32; *Bellrichard*, 779 F. Supp. at 460–61; *Watts*, 394 U.S. at 706–08; *Bagdasarian*, 652 F.3d at 1117–19; *O'Dwyer*, 443 F. App'x at 19–20.

1. "Your day will come" is indefinite and nonviolent.

The statement identifies no act of harm. It does not say the speaker will kill, shoot, beat, stab, or otherwise injure anyone. It does not state that violence will occur at all. That absence is dispositive. In *Mabie*, *Nicklas*, *LaFontaine*, *Dierks*, and *Ivers*, the threatening character of the communication is supplied by language that describes violence. Here, there is none.

Instead, "Your day will come" mirrors the type of indefinite, ominous phrasing courts have found insufficient. In *Barcley*, the statement "you are the first S.O.B. that will go" did not qualify as a true threat. 452 F.2d at 931–32. In *O'Dwyer*, even a statement that "a number of scoundrels might be at risk if I do become homicidal" was not enough. 443 F. App'x at 19–20. The statement here is less concrete than either. It identifies no injury, no means, no timeframe, and no communicated consequence beyond a vague suggestion that something adverse may occur. Under *Barcley* and *O'Dwyer*, it does not constitute a threat to injure.

10

2. "I know where your mom lives … And your dad. And your kids" asserts knowledge, not a threat of injury.

This statement may be invasive or unsettling. That is not the statutory test. Section 875(c) requires a communication that itself contains a threat to injure. A statement conveying knowledge of another person's location does not, without more, communicate an intent to inflict harm.

The contrast with the cases above is direct. In *Kirkendoll*, the location-based statement carried weight because it accompanied an explicit threat: "U gone die." The reference to where the victim "lay[s] [his] head" reinforced a communicated threat of death. Here, there is no such accompanying language. The statement lacks the feature that makes the communications in *Mabie*, *Nicklas*, *LaFontaine*, *Dierks*, and *Ivers* actionable: words expressing injury or death. It also falls short of cases such as *Bagdasarian* and *Watts*, where violence was at least referenced but still deemed insufficient. A statement that says only "I know where" family members live does not itself communicate that anyone will be harmed.

3. "Get home safe and fast" does not communicate a threat.

This statement contains no threat, no violent verb, no promise of harm, and no statement that the speaker will do anything. In *Ivers*, *Dierks*, and *Mabie*, the communications describe violence directly. This one does not describe violence at all.

The missing element cannot be supplied by tone. The cases discussed above reject liability where speech is alarming or heated but does not communicate a serious expression of unlawful harm. *Watts*, *Claiborne Hardware*, *Bagdasarian*, and *Bellrichard* make that

11

clear. "Get home safe and fast" does not communicate violence on its face, and § 875(c) does not permit the Court to supply that meaning.

4. <u>The three alleged communications, taken together, still do not amount to a threat to injure.</u>

Aggregation does not cure the defect. Even read together, the statements never communicate that the speaker will injure the recipient, injure the recipient's family, or commit any act of violence.

That is the dividing line reflected in the cases. In *Mabie*, *Nicklas*, *LaFontaine*, *Dierks*, and *Ivers*, the words themselves carried the threat; no inference was required because the communications expressly described unlawful violence. Here, inference does all the work. But *Barcley*, *Bellrichard*, *Watts*, *Bagdasarian*, and *O'Dwyer* confirm that § 875(c) does not reach speech merely because it is hostile, ominous, or unsettling. It reaches only communications that themselves convey a serious expression of intent to inflict unlawful physical harm. These do not.

Because the indictment quotes the statements verbatim, the Court can resolve that question as a matter of law. The words alleged do not resemble the communications in cases finding true threats and instead fall within the body of cases refusing to criminalize ambiguous or nonviolent speech. Count 1 therefore fails as a matter of law.

**C. <u>Because the indictment quotes the words and those words do not threaten injury, dismissal is appropriate at the pleading stage.</u>**

Where an indictment sets out the alleged communication in full, the Court determines as a matter of law whether those words satisfy the statutory element. Accepting the

12

allegations as true, an indictment survives only if, under a reasonable construction, the words alleged state the offense. *See United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996).

That standard is not met here. The statements pleaded, even taken as true, do not, under any reasonable construction, communicate a threat of unlawful violence.

The Eighth Circuit treats this as a threshold inquiry. A case proceeds to the jury only where "a reasonable recipient, familiar with the context of the communication, would interpret it as a threat." *United States v. Whitfield*, 31 F.3d 747, 749 (8th Cir. 1994) (quoting *United States v. Bellrichard*, 994 F.2d 1318, 1323–24 (8th Cir. 1993)). That rule presupposes language capable of conveying a threat. Where the words themselves do not communicate violence, there is nothing for a jury to interpret.

The indictment alleges no words capable of communicating a threat to injure. As Section B demonstrates, the statements do not resemble the communications in cases sustaining § 875(c) convictions and instead fall within the category of speech courts have held insufficient as a matter of law.

That defect cannot be cured by speculation about context or by evidence the Government may seek to introduce at trial. Context may inform meaning; it cannot supply an element the indictment does not allege. The Government may not ask a jury to infer a threat that the charged words themselves do not communicate.

Because the indictment quotes the statements in full and those statements do not communicate a threat to injure under any reasonable construction, Count 1 fails to state an offense and must be dismissed under Rule 12(b)(3)(B)(v).

13

**II.    THE INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE IT DOES NOT PLAUSIBLY ALLEGE THE REQUIRED MENTAL STATE**

Even assuming, arguendo, that the indictment's quoted words could be characterized as threatening, Count 1 fails as a matter of law. Section 875(c) and the First Amendment require a culpable subjective mental state directed to the threatening nature of the communication. The indictment alleges no facts from which such a mental state can be plausibly inferred.

Section 875(c) does not permit conviction based on negligence. It is not enough that a reasonable person might regard a statement as threatening. *Elonis v. United States*, 575 U.S. 723, 737–38 (2015). Because the Government seeks to punish speech, the First Amendment requires at least recklessness, meaning conscious disregard of a substantial risk that the communication would be understood as a threat of unlawful violence. *Counterman v. Colorado*, 600 U.S. 66, 74–75 (2023).

Where, as here, the alleged words do not communicate a threat of unlawful violence, the required mental state cannot be plausibly inferred from the content of the communication itself.

**A. *Elonis* requires a culpable mental state tied to the threatening nature of the communication; *Counterman* sets the constitutional floor at recklessness.**

In *Elonis*, the Supreme Court held that § 875(c) requires a culpable mental state as to the threatening character of the communication and rejected an objective, negligence-based theory of liability. 575 U.S. at 737–38. The statute is not satisfied merely because a

14

reasonable person might perceive the words as threatening. The mental state must be tied to the communication's threatening character.

In *Counterman*, the Court held that the First Amendment independently requires proof that the defendant had a subjective understanding of the threatening nature of the statements, and that recklessness, defined as conscious disregard of a substantial risk that the statements would be viewed as threatening violence, is constitutionally sufficient. 600 U.S. at 74–75.

Taken together, § 875(c) requires a culpable mental state beyond negligence as to whether the communication is threatening, and the First Amendment requires at least recklessness as to whether the communication would be understood as threatening violence.

**B. <u>The indictment's stacked mens rea recitation is conclusory and cannot cure the absence of a threatening communication.</u>**

The indictment alleges that Mr. Ramirez acted "with the purpose of issuing a threat," "with knowledge that the communication would be viewed as a threat," and "consciously disregarding a substantial and unjustifiable risk that the communication would be viewed as a threat." These are legal conclusions, not factual allegations.

The indictment pleads the communications in full, and those words do not convey threatened injury or unlawful violence. Appending a series of mens rea labels does not transform nonviolent, indefinite language into a plausible allegation that Mr. Ramirez purposely or knowingly threatened violence or consciously disregarded a substantial risk that he was doing so.

15

C. **The content alleged forecloses any plausible inference of purpose, knowledge, or recklessness as to a threat of violence.**

At most, the indictment supports an inference of hostility or an intent to unsettle. That is not enough. Under *Counterman*, the relevant mental state is not a generalized intent to offend, insult, or intimidate. It is at least recklessness as to whether the communication would be understood as threatening violence. 600 U.S. at 74–75.

Given the content alleged, the indictment does not plausibly allege that Mr. Ramirez had a subjective understanding that he was threatening violence or that he consciously disregarded a substantial risk of doing so. Its theory instead depends on recipient perception untethered to any threatened injury in the words themselves. That is insufficient as a matter of law.

D. **Because the indictment does not plausibly allege the required mens rea as to a threat of violence, Count 1 must be dismissed.**

To proceed under § 875(c) consistent with the statute and the First Amendment, the Government must allege both a threatening communication and a culpable mental state directed to the threatening nature of that communication. The indictment alleges neither in a plausible, non-speculative way. It pleads nonviolent, indefinite statements and appends conclusory mens rea labels.

Because the indictment supplies no factual basis connecting those statements to a plausible allegation of purpose, knowledge, or recklessness as to threatening violence, Count 1 fails to state an offense and must be dismissed.

16

## CONCLUSION

Section 875(c) applies only to communications that contain a "threat to injure," as limited by the First Amendment to true threats. The indictment quotes Mr. Ramirez's statements in full. Accepting those allegations as true, the statements do not, under any reasonable construction, communicate a threat of unlawful violence.

Because the words themselves do not satisfy the statutory element, the indictment does not allege a violation of § 875(c). For the same reason, it does not plausibly allege that Mr. Ramirez acted with purpose, knowledge, or recklessness as to a threat of violence.

Count 1 fails to state an offense and must be dismissed under Rule 12(b)(3)(B)(v).

Dated: March 26, 2026

Respectfully submitted,

/s/ **Sarah Gad**

Sarah R. Gad
Reg. No. 0403328
Gad & Gad Law Offices LLP
8 E 25th Street
Minneapolis, MN 55404
Telephone: (612) 412-1710
sarah@gadlawoffice.com

17