UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-42 (DWF/JFD)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S OPPOSITION |
| v. | ) | TO DEFENDANT'S MOTION TO |
| | ) | DISMISS INDICTMENT |
| JOSE ALBERTO RAMIREZ, | ) | |
| a/k/a JOSE ALBERTO RAMIREZ, JR., | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its opposition to the defendant's motion to dismiss the Indictment. (ECF 33)   The defendant moves to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for "failure to state an offense." Because the charge in the Indictment tracks the statutory language of the offense charged and reasonably provides the defendant sufficient information to allow him to plead and bar a subsequent prosecution, the Indictment is facially sufficient, and the defendant's pretrial motion should be denied.   Additionally, because whether the defendant's alleged speech constitutes a "true threat" is decisively a question reserved for the jury at trial as the fact-finder, the defendant's pretrial motion to dismiss should be denied.

<u>Relevant Procedural History and General Factual Background</u>

On January 28, 2026, the Court issued a criminal complaint charging the defendant with one count of knowingly transmitting, in interstate and foreign commerce, threats to injure the person of another, on or about January 15, 2026, in

violation of 18 U.S.C. § 875(c).    (ECF 1, 26-mj-95 (DJF))    The accompanying complaint affidavit, (ECF 1-1, 26-mj-95 (DJF)), contains a robust factual background, which is incorporated herein by reference.    In summary, following an immigration-enforcement-involved shooting in Minneapolis on the evening of January 14, 2026, FBI agents responded to the scene to investigate the shooting, but were not involved in any immigration enforcement.    As a result of the shooting, a large group of protestors gathered and became violent, forcing FBI agents and personnel to leave behind two government-owned vehicles parked near the scene and evacuate the area on foot for their personal safety.

Several protestors vandalized and broke into the two government-owned vehicles left at the scene, causing a total loss of each vehicle.    FBI-issued equipment and materials, including a rifle, rifle suppressor, a handgun, tactical vests, FBI IDs and building access badges, and various personal and FBI documents were stolen from the ransacked vehicles. Some stolen documents were driver's licenses and rosters with employees' phone numbers, email addresses, and other personal information.    Much of the compromised information was posted publicly online via social media.    Soon thereafter, several FBI Agents and employees, including the Minneapolis FBI Special Agent alleged victim in this matter (Victim A), began receiving multiple harassing and threatening phone calls, texts, and emails.

Victim A told investigators that Victim A began receiving threatening and harassing communications on January 14, 2026, shortly after the FBI vehicles were vandalized. Victim A stated that the communications were harassing in nature and

several were perceived as threats to harm Victim A and/or Victim A's family. Investigators determined that Victim A's work cellphone received text messages, emails, and voicemails sent by approximately 23 different senders.

As it pertains to this matter, on January 15, 2026, Victim A received one voicemail message, followed by two text messages sent within moments of one another from the same cellular telephone number ending in 7574, which investigators determined to be associated with the defendant. The voicemail sent from 7574 at around 6:01 a.m. was approximately seven-seconds long and stated the following:

> *"What up [Victim A's First Name]? You bitch ass nigga. Your day will come nigga. Bitch ass nigga."*[1]

The text messages sent in succession at 6:02 and 6:03 a.m. stated, *"[Victim A's Full Name],"Yahahahahhahaha bitch ass nigga, I know where your mom lives bro. And your dad. And your kids buddy. Get home safe and fast."*[2] (See redacted image)



---

[1] The defendant used a common and accurate variation of Victim A's first name.

[2] The defendant used a common and accurate variation of Victim A's first name, and Victim A's last name.

From the context of the messages, Victim A perceived the defendant's messages as threatening to cause harm to both Victim A and Victim A's immediate family members.

Investigators learned that the defendant had a prior threats-related incident reported to the Schaumberg Village Police Department in October 2024, wherein the defendant's former employer told police that the defendant had been terminated for threatening to shoot another employee, and that the defendant sent threatening messages that he would be returning to the workplace despite being fired. The manager provided police with the same 7574 number for the defendant that was used to send the threatening voicemail and texts to Victim A.[3]   Investigators also learned that the defendant's criminal history includes several felonies and misdemeanors in Illinois, including: Misdemeanor Domestic Battery/Physical Contact (2017), Felony Burglary (2017), Felony Mob Action (2020), and Felony Burglary (2023). (*See* ECF 30 at 10)

The FBI arrested the defendant on the Complaint-Warrant on January 29, 2026 at his place of employment in Barrington, Illinois.   (ECF 30 at 4)   The defendant had his 7574 cell phone on his person and it was seized as evidence.   (Id.) Arresting agents transported the defendant to the local police station and informed him of the charge alleged in the Complaint.   The defendant became extremely agitated, belligerent, and combative, loudly swearing at agents and officers, making veiled threats that "all you motherf**rs are going down," and that he was going "all

---

[3] The incident report noted that no charges were filed at the time of the incident.

the f**king way," threatening to sue them until he dies, and obstructed the booking process by repeatedly refusing to be fingerprinted or photographed by the FBI for nearly one hour. (Id.) The defendant repeatedly called the agents variations of "bitch ass motherf**rs," and "bitch ass n****s."

Agents transported the defendant to the local FBI field office to attempt to process him there, but the defendant continued obstructing process during the transport and at the field office. The defendant repeatedly told agents that they would need to force him, fight him, or beat him to take his prints. He again made veiled threats, telling agents to see how far he's really going to go, which he then claimed was not a threat. He also threatened to put agents' information "all over" social media, "names and everything," (Id. at 5). After making agents restrain him to fingerprint and photograph him, the defendant refused to walk back out of the processing room, and told agents to carry him out of the room, stating, "Bitch ass n***a, carry me then, n***a, carry me, n***a," (Id.)

On February 3, 2026, the District Court in the Northern District of Illinois held an evidentiary detention hearing and ordered the defendant detained pending further proceedings and removed to the District of Minnesota. (Id. at 6)

On February 10, 2026, the defendant made his initial appearance in this District, and was ordered detained. (ECF 11, 13) The Pretrial Services Report Addendum also recommended detention on both risk of non-appearance and danger. (ECF 20) The Court ordered the defendant detained. (ECF 13)

5

On February 12, 2026, a grand jury returned a one-count Indictment charging the defendant with Interstate Transmission of a Threat to Injure, in violation of 18 U.S.C. § 875(c), which carries a statutory maximum of five-years' imprisonment, for the alleged threatening voicemail and texts described above and in the Complaint affidavit.   (ECF 16)

On March 4, 2026, the defendant moved to revoke the detention order under 18 U.S.C. § 3145(b).   (ECF 25)   The Court denied the motion, finding in part that "the messages Ramirez allegedly sent to the victim in this case are serious and indicated that he knew the addresses of the victim's family members." (ECF 32 at 3)

On March 26, 2026, the defendant filed the present motion to dismiss the indictment for failure to state an offense.   (ECF 33)

## ARGUMENT

1. <u>Because the Indictment is legally sufficient on its face, the defendant's motion to dismiss should be denied.</u>

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."   Fed. R. Crim. P. 7(c)(1).   It is well settled that as long as "the indictment contains a facially sufficient allegation," it "survives a motion to dismiss for failure to state an offense."   *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (citing *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)).   "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to

6

subsequent prosecution." *United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019) (quoting *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993), & reversing dismissal of indictment).   Indeed, an indictment is usually sufficient unless it is "so defective that it cannot be said, by any reasonable construction, to charge the offense." *United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019) (quoting *United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012)); *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

The Indictment filed against the defendant (ECF 16) readily satisfies these legal standards and meets the Rule 7(c) requirements.   18 U.S.C. § 875(c), as charged in Count 1, provides that "[w]hoever transmits in interstate or foreign commerce any communication containing . . . any threat to injure the person of another, shall be . . . imprisoned . . . ."   18 U.S.C. § 875(c).

Count 1 essentially tracks the exact statutory language by alleging that, on or about the specific date and times, the defendant "did knowingly transmit, in interstate and foreign commerce, communications consisting of text and voicemail messages, from a cellular telephone to the cellular telephone of Victim A, containing a threat to injure the person of another, namely Victim A and Victim A's family members . . . all in violation of Title 18, United States Code, Section 875(c)." (ECF 16) "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Jawher*, 950 F.3d 576, 579 n.2 (8th Cir. 2020) (quoting *Sewell*, 513 F.3d at 821). Because the Indictment's language is essentially verbatim of the

7

statutory language charged, the Indictment is facially sufficient to state an offense, and the defendant's motion to dismiss should be denied.

Despite acknowledging that the "inquiry turns on what the communication conveys," and not on the use of language, (ECF 33 at 9), the defendant then contradictorily asserts that "the sufficiency inquiry turns on the words themselves," without any citation to support this erroneous proposition, (Id. at 10). But contrary to the defendant's assertion, "[u]sage of a particular word or phrase in the indictment is not required" if a Court can recognize a "valid offense and the form of the allegation 'substantially states the element[s].'" *United States v. White*, 241 F.3d 1015, 1021 (8th Cir. 2001). *See also United States v. White*, 610 F.3d 956, 958-59 (7th Cir. 2010) (per curiam) (noting that an indictment that "tracks the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive.").

The Indictment, however, goes beyond simply stating the essential elements of § 875(c). *See White*, 241 F.3d at 1021 (noting that Court "will find an indictment insufficient only if an 'essential element 'of substance' is omitted'"). The Indictment alleges the instrument used to transmit the threat (i.e., the defendant's cellular phone), the means by which the alleged victim received the threat (i.e., Victim A's work cellular phone), the kind of communication (i.e., the voicemail message and the text messages), *and* the specific words of the alleged threat. Not only, therefore, does the Indictment track the words of the statute to state all its elements, but it also

provides the defendant enough factual particulars for him to be aware of the specific conduct at issue. *White*, 610 F.3d at 958-59. Because the Indictment more than facially suffices to state the offense, it readily meets the Rule 7(c) requirements, and the defendant's motion to dismiss should be denied.

The defendant, however, erroneously asserts that "the indictment survives only if those words are capable of communicating a threat . . . under a reasonable construction," (ECF 33 at 10), citing *United States v. Alkhabaz*, 104 F.3d 1492, 1495-96 (6th Cir. 1997). This assertion is incorrect because the government is not even required "to quote the alleged threats in the indictment." *United States v. Abdulkadir*, 2016 WL 659711, at \*3 (D. Minn. Feb. 18, 2016) (denying defendant's motion to dismiss indictment charging § 115(a) threats to murder United States judge and federal officers and § 875(c) threats to injure). *See also United States v. Saul*, 2020 WL 2124853, at \*4 (D. Neb. May 20, 2020) ("It is neither feasible nor required for an indictment to recount all surrounding factual circumstances.") (construing threats indictment). Moreover, the Sixth Circuit's *Alkhabaz* decision relied on by the defendant, which erroneously added an element to § 875(c)'s quantum of proof, has been abrogated by the Supreme Court's decision in *Elonis v. United States*, 575 U.S. 723 (2015). *See United States v. Doggart*, 906 F.3d 506, 512 (6th Cir. 2018) (recognizing abrogation of *Alkhabaz* by *Elonis*).

Here, the Indictment on its face lists all the essential elements of a § 875(c) offense, provides factual specifics of the alleged threat, the medium allegedly used to communicate the threat, the language of the alleged threat, and the targets of the

9

alleged threat.   The Indictment, therefore, is wholly sufficient to allow the defendant to respond to the charges and to plead double jeopardy after conviction or acquittal should the charges be brought again.   *Flute*, 929 F.3d at 587; *United States v. Mallen,* 843 F.2d 1096, 1102 (8th Cir. 1988) (noting that indictment considered sufficient "if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution").   On this record, the Indictment cannot be deemed to be "so defective that it cannot be said, by any reasonable construction, to charge the offense." *Palmer*, 917 F.3d at 1039.   The defendant's motion to dismiss for failure to state an offense, therefore, should be denied.

2. <u>Whether the defendant's statements constitute a "true threat" within the Supreme Court's jurisprudence should be left for the jury to decide at trial and not by a court on a motion to dismiss the Indictment.</u>

The defendant significantly emphasizes that to actually charge a § 875(c) offense, "the words themselves" must overtly communicate a threat, or the Indictment must be dismissed. (ECF 33 at 11-13) But "Congress meant to proscribe a broad class of threats in Section 875(c)."   *Elonis v. United States*, 575 U.S. 723, 734 (2015).   And "[i]n the absence of unusual facts though, the question whether a statement amounts to a true threat is a question generally left to a jury."   *Brandy v. City of St. Louis, Missouri*, 75 F.4th 908, 915 (8th Cir. 2023).   Other Circuits are in accord.   *E.g., United States v. Clemens*, 738 F.3d 1, 13 (1st Cir. 2013) (finding that First Amendment is "not a basis on which to take away from a jury the factual question of whether or not defendant's emails conveyed true threats") (collecting cases from various Circuits); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("In the usual case, whether a communication constitutes a threat or a true threat 'is

10

a matter to be decided by the trier of fact.'"); *White*, 610 F.3d at 959 (rejecting argument to dismiss indictment on First Amendment grounds, because "potential First Amendment concern[s] [are] addressed by the requirement of proof beyond a reasonable doubt at trial, not by a dismissal at the indictment stage"); *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008) (whether statements were true threats is a question for the jury).

The defendant's reliance on *United States v. Barcley*, 452 F.2d 930 (8th Cir. 1971) and *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013) for the proposition that a § 875(c) charge stands only if "the words themselves" communicate a threat is misplaced and distinguishable from the matter at hand.   (ECF 33 at 12-13)   First, *Barcley* was a § 876(c) case and was decided on appeal *after* a jury verdict—not on a motion to dismiss the indictment.   Second, the statements at issue in *Barcley* were within a "'letter communicat[ing] a client's dissatisfaction with the services of his attorney,' a communication which falls within the purview of the First Amendment . . . [and] neither [recipient] referenced in the letter testified that they experienced fear upon reading the letter."   *United States v. Mabie*, 663 F.3d 322, 330-31 (8th Cir. 2011).   And third, *Barcley* has been distinguished by no fewer than five subsequent Eighth Circuit panels, as well as the Second Circuit, thereby diminishing its precedential value.   With respect to *Nicklas*, the Eighth Circuit in *Dierks* noted that "*Elonis* significantly undercut *Nicklas* by establishing that § 875(c) is a specific intent crime."   978 F.3d at 591-92.

Contrary to the defendant's assertion that a jury may not *infer* a threat because the charged words themselves must communicate an overt threat, (ECF 33 at 13), it is in fact the providence of "the fact-finder to determine 'in the context of the totality of the circumstances in which the communication was made'" whether the defendant's statements constitute a true threat. *United States v. Ivers*, 967 F.3d 709, 718 (8th Cir. 2020) (quoting *United States v. Bellrichard*, 994 F.2d 1318, 1323 (8th Cir. 1993) (noting that the threat must be "viewed in textual context and also in the context of the totality of the circumstances in which the communication was made")). Indeed, the Eighth Circuit in *Ivers* expressly held that based on the totality of the circumstances presented at trial, including the defendant's prior conduct, "*the jury could reasonably infer a true threat* of present or future harm" from the totality of Ivers' statements.   *Id.* at 719 (emphasis added).

For many the same reasons, the defendant parsing his alleged threating language in isolation, looking at each statement by itself without surrounding context, also misses the mark, (ECF 33 at 14-16), because "context matters," *Elonis*, 575 U.S. at 747 (Alito, J., concurring in part).   As noted, whether a statement amounts to a true threat is a fact-intensive inquiry "for the fact-finder to determine in the context of the totality of the circumstances in which the communication was made."   *Ivers*, 967 F.3d at 718. "[T]he communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made."   *Dierks*, 978 F.3d at 589.   *See United States v. Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000) (noting that "to determine whether a true threat

12

exists," the alleged threat must be viewed "in light of its entire factual context"). Moreover, "[i]n determining whether a statement amounts to an unprotected threat, there is no requirement that the speaker intended to carry out the threat, nor is there any requirement that the speaker was capable of carrying out the purported threat of violence." *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002). *See Dierks*, 978 F.3d at 590 ("The 'true threat' doctrine only requires that a jury find that a defendant's statement was serious, not literal or even intelligible. Even if 'a person expresses himself in an outlandish, illogical manner,' his statements can be seriously threatening.") (citation omitted).

Taken as a contextual whole, the defendant threatened that the victim-agent's "day will come" in the voicemail, and the two text messages that immediately followed were arguably even more threatening—directed at the victim-agent's parents and children—asserting that the defendant allegedly knew where they lived, and imploring the victim-agent to "get home safe and fast," arguably intending to cause concern and fear in contextual totality about immediate pending harm to the victim-agent's immediate family members. *See Bellrichard*, 994 F.2d at 1321 (recognizing that correspondence directed to one's home or work more likely to be perceived as threat than general statement delivered at public gathering). Indeed, even the Court noted the serious nature of the threatening language in its Order denying the defendant's motion to revoke the detention. (*See* ECF 32 at 3, finding in part that "the messages Ramirez allegedly sent to the victim in this case are serious and indicated that he knew the addresses of the victim's family members.")

13

Properly looking at the defendant's statements in the totality of the circumstances and in context, "reasonable jurors could certainly conclude that these statements constitute a 'serious statement or communication which expresses an intention to inflict injury' [on the victim] 'at once or in the future . . . .'" and therefore "constituted a threat based on a consideration of the alleged statement as a whole, and in the context in which the statements were made.'" *Stock*, 728 F.3d at 298-99.

At bottom, the defendant's arguments are disputes over what meaning and inferences that can be drawn from the totality of the defendant's words—which should properly be left to a fact-finding jury and not resolved by the Court on a motion to dismiss. *See generally United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (noting that federal criminal procedure does not "provide for a pre-trial determination of sufficiency of the evidence"). *See also United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025) (noting that "[t]here is no procedure in federal criminal cases equivalent to the motion for summary judgment in civil cases, and the government has no duty to reveal all of its proof before trial."). Whether the defendant's statements do or do not amount to "true threats" is a factual determination for a jury to decide and is not a basis for dismissing the Indictment.

"Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. In considering a motion to dismiss, a district court may not make factual findings when an issue is inevitably bound up with evidence about the alleged offense itself." *Grubb*, 135 F.4th at 607

14

(citations and quotations omitted).   Here, resolution of the defendant's motion to dismiss would require the Court to make factual findings about just such an issue, namely, whether the defendant's communications constitute a "true threat" under 18 U.S.C. § 875(c), as alleged in the Indictment.   Such required findings, however, would be in direct contradiction to the Eighth Circuit's holding in *Grubb*.   *See also United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016) (holding that "[g]ood cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that fall within the province of the ultimate finder of fact.").

"But the government is not required to present its case in response to a motion to dismiss, and dismissal is not justified based on 'the government's refusal to come forward with evidence to support its case in the face of a defendant who has presented his own proof.'" *Grubb*, 135 F.4th at 607.   And "[u]nless the prosecution voluntarily presents the entirety of its evidence in response to a pretrial motion, the court cannot know the universe of additional facts that will be presented at trial and whether they will be disputed." *Id.*   Indeed, even when deciding a motion for judgment of acquittal, the "district court does not decide that a particular communication *is* a threat as a matter of law, but whether there is sufficient evidence *for a jury to decide* that a reasonable recipient would interpret it as a threat. If, at that point, the evidence is sufficient, *it is up to the jury to decide* whether the language in the communication at issue was a threat." *United States v. Floyd*, 458 F.3d 844, 849 (8th

15

Cir. 2006) (citation omitted; first emphasis in original).   Accordingly, the defendant's motion to dismiss should be denied, and the matter should be referred for jury trial.

In any event, the defendant's undue emphasis on the necessary choice of words to constitute a true threat has been rejected by other circuit courts. In *United States v. Turner*, 720 F.3d 411, 422 (2d Cir. 2013), for example, the Second Circuit rejected the defendant's claim that his words, finely parsed through a "a 'close syntactical analysis'" could not amount to "true threats" because "he never explicitly wrote, 'I will kill them.'"   The Second Circuit instead held that a "rigid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience," would leave society "powerless against the ingenuity of threateners . . . by an implied menace as by a literal threat."   *Id.* at 422-23. The *Turner* court further held that "[a]n absence of explicitly threatening language does not preclude the finding of a threat," and the determination of whether or not a statement is a true threat "is a question generally best left to a jury." *Id.* at 424. *Compare United States v. Cessor*, 2020 WL 4436382, at *2 (D. Neb. Aug. 3, 2020) (finding that jury could "reasonably infer a true threat" from defendant's statement "that he 'was going to take out Trump' when considering totality of circumstances"), *aff'd,* 30 F.4th 736 (8th Cir. 2022).   The *Turner* court concluded that the defendant's argument depended too much on "literal denotation and syntax," but that threats "need not be explicit nor conveyed with the grammatical precision of an Oxford don." *Turner*, 720 F.3d at 425.   *See also United States v. Wheeler*, 776 F.3d 736, 745 (10th Cir. 2015) (agreeing with the *Turner* court and concluding that such a "wooden

16

. . . interpretation" of the true threats requirement would "leave the state powerless against the ingenuity of threateners").

Here, a reasonable jury could readily find that the defendant's statements amount to a specific and concrete targeting of an individual, rather than overheated political rhetoric or nonsensical jest. Because a determination of whether the defendant's statements are true threats or within the ambit of First Amendment protection is best left to a fact-finding jury at trial, the defendant's motion to dismiss the Indictment should be denied.

## CONCLUSION

For all the foregoing reasons, the Court should deny the defendant's motion to dismiss the Indictment, and the matter should proceed to trial.

Dated:  <u>April 10, 2026</u>                Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

<u>/s/ *Benjamin Bejar*</u>

BY:  BENJAMIN BEJAR
Assistant United States Attorney
District of Minnesota

17