IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 0:26-cr-00042-DWF-JFD |
| *Plaintiff*, | |
| v. | **REPLY TO OPPOSITION TO** |
| | **DISMISS INDICTMENT FOR** |
| JOSE ALBERTO RAMIREZ, | **FAILURE TO STATE AND OFFENSE** |
| *Defendant*. | |

## I.     <u>INTRODUCTION</u>

A "true threat" under § 875(c) is a statement in which the speaker communicates a "serious expression of intent to commit an act of unlawful violence to a particular individual or group." *Virginia v. Black*, 538 U.S. 343, 359 (2003). That requirement is not satisfied by calling nonthreatening language a "threat." A true threat exists only where the communication, on its face and in context, is "sufficiently unequivocal, immediate, and specific to convey a gravity of purpose and an imminent prospect of execution." *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 627 (8th Cir. 2002).

The charged statements do not communicate a serious expression of intent to commit unlawful violence. "Your day will come" is indefinite and nonviolent. "I know where your family lives" conveys knowledge, not harm. "Get home safe and fast" is, at most, ominous and does not express an intent to injure. None of these statements, whether read alone or together, expresses an intent to commit violence, describes any act of unlawful violence, or conveys that such violence will occur. Read to convey a threat, they

1

would do so only through inference; and if inference alone were sufficient, any speech could be treated as threatening.

In every First Amendment case the Government cites, the communication itself conveyed a serious and unambiguous expression of unlawful violence. Context reinforced what the speaker said; it did not supply a missing element. Here, the Government cannot identify any statement by Mr. Ramirez that communicates unlawful violence. It instead relies on surrounding circumstances—including the conduct of others and background facts outside the communication—to construct a threat the words do not contain.

The Government's position would effectively eliminate Rule 12 review in § 875(c) cases. If labeling speech a "threat" were sufficient to reach a jury regardless of the words used, then no indictment could be meaningfully tested at the pleading stage. That is not how § 875(c) operates. The statute requires a communicated threat of unlawful violence before a case proceeds to a jury. The question is what the defendant said—not what others said, not the political climate, and not who the Government says the defendant is. Context may clarify ambiguity. It cannot supply a threat where none is expressed.

The pleading standard is low, but it is not nonexistent. The Government cannot simply recite the statute, label nonviolent speech a "threat of unlawful violence," and demand a trial on those terms without identifying the actual threat. Each case it invokes involves language that itself conveys an unambiguous threat of unlawful violence. A case proceeds to trial only where the charged words are capable of doing the same. That boundary is not discretionary. Section 875(c) does not permit the Government to assemble one from context and defer the analysis to a jury. The indictment must be dismissed.

2

## II.    LAW AND ARGUMENT

### A.  The Indictment is Insufficient Because the Charged Communications Do Not Contain a "Threat to Injure" Under Any Reasonable Construction.

The Government devotes substantial attention to the low pleading standard for an indictment. *See* Dkt. 34 at 6–10. Defendant does not dispute that the standard is low. But it is not nonexistent, and *Elonis* does not diminish the requirement that an indictment allege facts that satisfy each element of the offense. An indictment charging § 875(c) must still allege a communication that constitutes a threat of unlawful violence.

The defect here is not a lack of detail, and Defendant does not contend that an indictment must plead every surrounding circumstance or quote the alleged communication verbatim in every case. The Government, however, chose to charge speech and to quote that speech in full. *See* Dkt. 16 at 1. In doing so, it pleaded the operative facts of the alleged offense. The sufficiency of the indictment therefore rises or falls on those facts. And those facts do not establish at threat of unlawful violence.

The Government repeatedly asserts that an indictment is sufficient if it tracks the statutory language. That proposition is generally correct. *See*, *e.g.*, *United States v. Jawher*, 950 F.3d 576 (8th Cir. 2020) (reciting sufficiency standard and upholding indictment that tracked § 922(g)(5)(A), though reversing the conviction); *United States v. White*, 241 F.3d 1015, 1023 (8th Cir. 2001) (same). But those cases address indictments that recite the statute without pleading facts that fail to satisfy an element. They do not address a case—like this one—where the Government pleads the communication itself and that communication does not meet the statutory definition of a threat of unlawful violence.

3

The Government's position would permit it to recite § 875(c), label speech a "threat to injure," and proceed to trial even where the words themselves do not communicate violence. That is not the pleading standard. A case proceeds only where the charged words are capable, under any reasonable construction, of conveying a threat of unlawful violence. *See United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019).

The Government mischaracterizes Defendant's argument. Defendant does not advocate for a heightened pleading standard or any form of evidentiary preview. The point is narrower. The indictment pleads the words themselves, and those words constitute the entirety of the charged conduct. And under any reasonable construction, they do not communicate a threat of unlawful violence.

The Government's own cases underscore that point. In each, the conduct alleged plainly satisfied the element at issue. None involved an indictment that included the operative facts and yet failed, on its face, to establish an essential element.

In *United States v. Saul*, 2020 WL 2124853, at *1 (D. Neb. May 20, 2020), the communication was explicit: "Some1 borrow me a gun and a couple hundred rounds of ammo. Wanna get in on this whole mass shooting craze before it dies down. Everybody getting shot at least once." No inference was required. The court held that the statement was sufficient to allege a threat to injure under § 875(c), and dismissal was properly denied. *Id.* at *4.

The same is true in *United States v. Abdulkadir*, 2016 WL 659711, at *1–2 (D. Minn. Feb. 18, 2016), where the defendant explicitly threatened to murder federal judges and officers, and in *United States v. Doggart*, 906 F.3d 506, 510–12 (6th Cir. 2018), where the

4

defendant stated that individuals "had to be killed" and that buildings "need[ed] to be burnt down," accompanied by detailed planning, identified methods, and a defined timeline. In each instance, the court found the threat to injure evident from the words themselves. [1]

That same feature appears across the Government's cases, including those outside the First Amendment context. In *United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019), the statute "unambiguously encompassed" the charged conduct. In *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008), the indictment alleged no facts inconsistent with the offense. And in *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021), omitting a statutory definition did not undermine an essential element. In each case, the alleged conduct fit comfortably within the statute. None involved an indictment that fully set out the operative facts yet failed, as a matter of law, to satisfy an element.

This case does. The Government does not identify a threat to injure in Mr. Ramirez's words. It pleads those words verbatim, recites the statutory elements, and concludes that they amount to a "threat." Its opposition brief then turns to context, the conduct of others, and surrounding events to supply what the words do not. But context may inform meaning. It cannot create a threat where the words themselves do not communicate one. And as *Sholley-Gonzalez*, 996 F.3d at 893, makes clear, sufficiency is determined "by the face of the indictment, not the underlying evidence."

---

[1] The Government's assertion that *United States v. Alkhabaz* was "abrogated" by *Elonis v. United States* is overstated. *See* Dkt. 34 at 9. *Elonis* addressed only the mental-state requirement under § 875(c), holding that negligence is insufficient. It did not alter the definition of a "true threat" or displace the threshold requirement that the charged communication be capable of conveying a threat of unlawful violence. *Alkhabaz* therefore remains instructive on that point.

Defendant does not contend that an indictment must quote the alleged communication or include every factual detail. But the Government cannot have it both ways. Having chosen to charge speech and to plead the words in full, it must show that those words satisfy the statutory element. It cannot recite the communication, then retreat to the proposition that it need not have done so, and proceed as though a bare recitation of § 875(c) is sufficient to reach a jury.

The pleading standard is not so malleable. An indictment must allege facts that satisfy each element of the offense. Where the Government elects to plead the communication itself, those words must contain a threat to injure. The Government is bound by the language it chose to charge. It cannot rely on context, the conduct of others, or post hoc inference to supply an element the words do not express. Accepting that approach would permit the Government to alternate between factual pleading and bare statutory recitation as convenient, while insulating the indictment from meaningful review. That is not pleading. It is a legal conclusion untethered to the facts alleged.

## B. The Communications Do Not Contain a "Threat to Injure" and Should Not Be Deferred to a Jury.

The Government is correct that § 875(c) reaches a broad category of threats and that, in the ordinary case, whether a statement constitutes a true threat is a question for the jury. *See Elonis v. United States*, 575 U.S. 723, 734 (2015); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013). But that proposition has a necessary antecedent limitation the Government repeatedly elides: a case does not reach a jury unless the charged words

6

themselves are capable, under any reasonable construction, of conveying a threat of unlawful violence.

That limitation is legal, not discretionary. Rule 12 authorizes dismissal where "trial of the facts… would be of no assistance." *United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025). This is such a case. The indictment pleads the full text of the alleged communications. There is no factual dispute to develop, no ambiguity requiring evidentiary context, and no missing facts that could transform the meaning of the words. The Court is presented with the speech itself. The question is whether those words are capable of communicating a threat of unlawful violence. If they are not, the inquiry ends. There is nothing for a jury to decide.

### i.    *The Government's Authorities Uniformly Involve Violence Conveyed by the Words Themselves*

When read closely, the Government's authorities confirm the very limitation they seek to avoid: each involves language that already conveyed violence on its face. Context clarified or reinforced that meaning. It did not create the threat.

Take *United States v. Clemens*, 738 F.3d 1, 4–5 (1st Cir. 2013). The defendant wrote: "You… will get what you deserve. Pow! Bang! Splat! I really, truly and sincerely wish you were dead… Be sure and watch your backside… I got this feeling someone's going to get hurt REAL BAD." That was not neutral or ambiguous language rendered threatening only by context; it was language already saturated with violence—death wishes, onomatopoeic gunfire, and direct predictions of serious bodily harm. Any arguably ambiguous phrase ("watch your backside") derives its meaning from surrounding language that is overtly

7

violent. Remove that surrounding language and ambiguity might remain. Here, there is no such language to perform that function. The Government does not ask the Court to interpret ambiguity; it asks the Court to supply threatening content that does not appear in the words themselves.

The same is true of *United States v. Stock*, 728 F.3d 287, 291 (3d Cir. 2013), where the defendant described "crushing [the victim] with his truck," searching for him, and "dragging him and drowning him." Those statements articulate a concrete plan to inflict lethal violence. No interpretive inference beyond the words themselves is required. The case proceeded to a jury not because the language was borderline, but because it was unmistakably threatening.

Likewise, *United States v. Parr*, 545 F.3d 491, 495–96 (7th Cir. 2008), involved detailed discussion of where explosives would be placed, how they would be detonated, and how to maximize casualties. The plan was described in definite terms: "Oh, it will be extremely loud… The damage that will be done will just be complete." Those statements conveyed a threat of unlawful violence without the need to supply it from context.

The Government's reliance on *United States v. Dierks*, 978 F.3d 585, 587–88 (8th Cir. 2020), fares no better. While it is true that threatening language need not be literal or polished, in *Dierks*, the defendant stated: "I'll f u up seriously… you have no clue U think I'm playing." Whatever its lack of polish, that statement readily conveys serious physical harm directed at a specific individual. Its threatening character is apparent from the words themselves.

8

*United States v. Turner*, 842 F.3d 602, 605–06 (8th Cir. 2016), stands for the unremarkable proposition that a threat need not be phrased with "grammatical precision." But the communications in Turner reached a jury not because they were borderline, but because they contained overtly violent content. The defendant identified specific federal judges, published their personal information, and advocated violence against them. The absence of a particular syntactic formulation did not negate that content; it confirms only that threats need not take a rigid linguistic form.

The Government's purported lower-bound examples follow the same pattern. In *United States v. Cessor*, 2020 WL 4436382, at *2 (D. Neb. Aug. 3, 2020), the defendant stated he had left to "take care of President Trump," in a context suggesting imminent action. The phrase functioned as a euphemism, but the words communicated an injurious objective. If the statements here contained any comparable expression of harm, this motion would not be before the Court.

The contrast with *Brandy v. City of St. Louis*, 75 F.4th 908, 914–15 (8th Cir. 2023), is also instructive. There, statements such as "I'll f*** you up" occurred during an escalating, face-to-face confrontation and were tied to an immediate physical encounter. Even in that setting, the language itself conveyed violence and was therefore appropriately submitted to a jury. The communications here lack both immediacy and any expression of harm.

The same pattern appears in *United States v. Wheeler*, 776 F.3d 736, 739–40 (10th Cir. 2015), where the defendant urged others to "kill cops," "hunt them down," and "kill their entire bloodlines." The Government invokes *Wheeler* to caution against a "wooden"

9

reading of threatening language. But there is nothing "wooden" about recognizing statements that explicitly call for killing law enforcement officers and their families as threats. In *Wheeler*, the reference to family members does not merely identify them; it targets them as objects of violence. The threat is conveyed directly by the words used.

That is precisely what is absent here. The charged language does not threaten the victim, his family, or anyone else. At most, it asserts knowledge: "I know where your mom lives… and your dad. And your kids." It does not pair that assertion with any act, harm, or expression of violence. The distinction is not semantic. In *Wheeler*, the reference to family members is inseparable from an explicit call to kill. Here, it is untethered from any injurious conduct and conveys no threat of violence under any reasonable construction. To hold otherwise would collapse the distinction between knowledge and threat.

Across these cases, the pattern is consistent. The words themselves conveyed violence. Context clarified meaning. It did not create it. This case is different. The indictment alleges a "threat to injure," but the quoted statements contain no reference to harm, no expression of violence, and no articulated act. Section 875(c) does not eliminate the requirement that a threat be communicated. Only after that requirement is satisfied does the question of intent go to a jury.

Here, that requirement is not satisfied. There is no violent content to interpret, no injurious act to contextualize, and no ambiguity for surrounding facts to resolve. The Government's theory asks the Court to begin with context and work backward to construct a threat from language that does not contain one. That is not how § 875(c) operates, and it is not how the First Amendment permits criminal liability for speech.

10

### ii.     Neither Elonis Nor the Government's Distinctions Displace the Requirement That the Communication Itself Convey a Threat

The Government's attempt to distinguish *United States v. Barcley*, 452 F.2d 930, 933 (8th Cir. 1971), and *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013), does not address the point for which Defendant cites those cases. See Dkt. 34 at 11. Defendant relies on them for the principle that a § 875(c) prosecution requires a communication that is itself capable of conveying a threat of unlawful violence. That principle does not depend on procedural posture.

The Government's reliance on *Elonis v. United States*, 575 U.S. 723, 734 (2015), to suggest that *Nicklas* has been "undercut" does not change the analysis. *Elonis* addressed the required mental state under § 875(c). It did not eliminate the antecedent requirement that the communication itself constitute a threat of unlawful violence. The Government conflates those inquiries. The question here is whether the words alleged are capable of communicating a threat of unlawful violence.

Defendant does not contend that a threat must be explicit or extreme. But some expression of unlawful violence must exist in the words themselves. None of the Government's cases holds otherwise. In each, the presence of a threat is evident from the words themselves. None permits facially non-threatening speech to be submitted to a jury so that context may supply a missing element.

That boundary is elementary. If non-threatening speech could be prosecuted on the theory that surrounding circumstances might transform it into a threat of unlawful violence,

11

the distinction between protected expression and criminal conduct would collapse. Liability would turn not on what was said, but on what a jury is willing to infer.

The Government's approach does exactly that. It assumes the existence of a threat of unlawful violence without identifying language that conveys one, and then insists that a jury must determine meaning. But a jury resolves factual disputes; it does not supply missing elements. Where the charged language cannot satisfy the element as a matter of law, there is nothing to submit.

### C. Context Does Not Compensate for the Indictment's Failure to State a "Threat to Injure."

Rule 12 permits pretrial resolution where "trial of the facts … would be of no assistance." *Grubb*, supra. This case presents that circumstance. The indictment sets out the alleged communications in full, leaving no ambiguity as to what was said. The question before the Court is therefore a legal one: whether the charged words are capable, as a matter of law, of communicating a threat of unlawful violence. If they are not, no amount of surrounding context can cure that defect.

The Government's response does not engage that question. It does not identify a threat of unlawful violence in the language it chose to charge. Instead, it turns outward, relying on prior allegations, arrest-day conduct, and the conduct of roughly twenty-two other individuals, most of whom were never charged. None of that bears on the dispositive inquiry under § 875(c), which is what Mr. Ramirez himself communicated.

12

Context has a role in interpreting a threat of unlawful violence, but only where the communication is first capable of being understood as such. It cannot supply an element that is absent from the words themselves.

### i.    The Conduct of Others is Irrelevant

The Government places significant weight on statements made by other individuals in an effort to cast Mr. Ramirez's words in a more threatening light. But the indictment contains no allegation that Mr. Ramirez was aware of those statements, adopted them, or acted in concert with anyone else. He is charged based solely on his own communication.

Section 875(c) does not allow the Government to attribute the words of others to a defendant who did not speak them. Criminal liability turns on the defendant's communication, not on statements made by third parties in the same general time frame.

At bottom, the Government's position is that because others made explicit threats during a volatile episode, Mr. Ramirez's separate words may be treated as threatening by association. That is not the law. Section 875(c) criminalizes what the defendant said, not what others said.

The same point underscores why the Government's reliance on these other communications is misplaced at this stage. Those statements are not part of the charged conduct. They would not be presented to the jury as Mr. Ramirez's words, and they cannot be used now to supply an element that the indictment itself does not establish.

Even on its own terms, the comparison the Government invites does not hold. In *Doggart*, the defendant engaged in detailed planning and identified specific methods. In *Stock*, the defendant took concrete steps to locate his target. In *Turner*, the defendant

13

published identifying information alongside directives for violence. In *Cessor,* the defendant stated he was "on [his] way" to "take care of" the President.

Mr. Ramirez did none of those things. He described no violence, articulated no plan, directed no one, and indicated no intent to inflict harm. The contrast is not one of degree; it underscores that the charged words do not communicate a threat. Where the charged language does not convey a threat of unlawful violence, the inquiry ends as a matter of law.

### ii.   *Prior Allegations and Arrest-Day Conduct Are Irrelevant*

The Government also relies on alleged prior uncharged threats, criminal history, and the defendant's conduct at the time of arrest. Those matters are not part of the charged communication. They are not elements of § 875(c), and they play no role in assessing the sufficiency of the indictment. That inquiry is confined to the face of the indictment, not to material offered after the fact to bolster it.

What the Government proposes is, in substance, a propensity-based inference: that because of alleged prior conduct or surrounding circumstances, the charged communication should be treated as threatening. That is not a permissible means of establishing an element of the offense. Section 875(c) does not criminalize a defendant's character or history; it criminalizes the communication of a true threat.

The Government must therefore identify a threat of unlawful violence in the words it chose to charge. It cannot rely on unrelated conduct to supply that element. Nor can it invoke intent to bridge that gap. Intent becomes relevant only if there is a threat to begin with. Section 875(c) does not criminalize intent in the abstract, and prior conduct cannot transform non-threatening language into a threat of unlawful violence.

14

### iii.    The Totality of the Circumstances" Does Not Supply a Missing Threat

The Government's reliance on a "totality of the circumstances" framework addresses a different question than the one presented here. That framework presupposes a communication that is already capable of conveying a threat of unlawful violence. It does not permit the Government to supply a threat where the words themselves do not communicate one.

The cases the Government cites follow that sequence. In *Ivers*, the defendant referenced killing the judge and described "different ways [he] planned to kill her." 967 F.3d at 718–19. In *Bellrichard*, 994 F.2d 1318, 1323 (8th Cir. 1993), the communications included explicit threats to kill and bomb identified individuals. In *Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000), the defendants' conduct reasonably signaled a bombing. In each instance, the threat to injure was apparent. Context made that meaning concrete; it did not supply it.

The Government's argument proceeds in the opposite direction. It identifies no threat of violence in Mr. Ramirez's words and instead assembles surrounding circumstances in an effort to read one into them, while insisting that intent must be deferred to a jury. That approach does not interpret the language; it substitutes for it. It is not contextual interpretation; it is an attempt to supply a missing element.

The Eighth Circuit's "true threat" framework requires a communication that conveys, in its terms, a threat of unlawful violence. Only then does context bear on how that threat is understood.

15

Here, the charged language does not do that. The Government points to statements such as "your day will come" and references to family members. Even taken together, those statements do not express harm, describe violence, or communicate an intent to inflict unlawful violence. At most, they convey hostility and foreboding, not a threat of unlawful violence.

Without language capable of conveying a threat of unlawful violence, there is no basis to proceed under § 875(c), and no role for a "totality of the circumstances" analysis.

## III.   CONCLUSION

The indictment fails to allege a communication that conveys a threat to injure under § 875(c). Where the charged language cannot, as a matter of law, satisfy that element, there is no basis to submit the case to a jury.

The indictment should be dismissed.

Dated: April 14, 2026

Respectfully submitted,

Gad & Gad Law Offices LLP

/s/ *Sarah Gad*

Sarah R. Gad
Attorney Reg. No 0403328
8 E 25th Street
Minneapolis, MN 55404
Telephone: (612) 412-1710
sarah@gadlawoffice.com

16