**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,

Plaintiff,

v.

Jose Alberto Ramirez,

Defendant.

Case No. 26-cr-0042 (DWF/JFD)

**ORDER**
**and**
**REPORT AND RECOMMENDATION**

---

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for an order on the United States' Motion for Discovery (Dkt. No. 23) and a report and recommendation on Defendant Jose Alberto Ramirez's Motion to Dismiss Indictment (Dkt. No. 33). The United States filed an opposition to the motion to dismiss on April 11, 2026 (Dkt. No. 34), and Mr. Ramirez filed a reply on April 14, 2026 (Dkt. No. 36).[1] The Court took the motion to dismiss under advisement on April 14 (Dkt. No. 35). For the reasons set forth below, the Court recommends that the motion to dismiss be denied. The motion for discovery is denied as moot in light of the Court's Pretrial Scheduling and Litigation Management Order (Dkt. No. 29), which addressed all of the discovery requested in the motion.

---

[1] A reply to a response is not contemplated by D. Minn. LR 12.1(c). Mr. Ramirez did not request or receive permission to file a reply memorandum, and the Court therefore did not consider it.

**Title 18 U.S.C. § 875(c)**

Mr. Ramirez is charged with one count of Interstate Transmission of a Threat to Injure the Person of Another, in violation of 18 U.S.C. § 875(c). (Indictment, Dkt. No. 16.) Title 18 U.S.C. § 875(c) makes it a criminal offense to "transmit[] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." The essential elements of the offense are: "(1) a communication transmitted in interstate commerce, (2) that contains a threat, and (3) which is transmitted for the purpose of issuing a threat or with knowledge the communication will be viewed as a threat." *United States v. Leveke*, 38 F.4th 662, 669 (8th Cir. 2022) (citing *Elonis v. United States*, 575 U.S. 723, 732, 740 (2015)).

**Allegations in the Indictment**

The Indictment alleges that on January 15, 2026, Mr. Ramirez knowingly transmitted in interstate and foreign commerce text and voicemail messages from a cellular telephone to a cellular telephone of Victim A, which contained a threat to injure Victim A and Victim A's family members, with the purpose of issuing a threat, with the knowledge that the communication would be viewed as a threat, and in conscious disregard of a substantial and unjustifiable risk that the communication would be viewed as a threat. (Indictment at 1–2.) The alleged communications are quoted in the Indictment.

1. At 6:01 a.m., "What up [Victim A's First Name]? You bitch ass nigga. Your day will come nigga. Bitch ass nigga."

2. At 6:02 a.m., "[Victim A's Full Name], "Yahahahahhahaha bitch ass nigga. I know where your mom lives bro. And your dad. And your kids, buddy."

3.  At 6:03 a.m., "Get home safe and fast."

(*Id.* at 1.)

**Federal Rule of Criminal Procedure 12(b)(3)(B)(v)**

Mr. Ramirez seeks dismissal of the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v). (Def.'s Mot. Dismiss at 6.) Under that rule, a defendant may bring a pretrial motion to dismiss on the grounds that an indictment does not state an offense. Fed. R. Cr. P. 12(b)(3)(B)(v). The Court views Mr. Ramirez's argument as a challenge to the sufficiency of the Indictment. Generally, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

Mr. Ramirez does not argue that the Indictment does not track the language of 18 U.S.C. § 875(c) and indeed, it does. The Indictment alleges that Mr. Ramirez knowingly transmitted in interstate and foreign commerce communications containing a threat to injure Victim A and Victim A's family members. Those allegations track the statutory language. The Indictment likewise contains all three elements of the offense, as set forth in *Leveke*: (1) communications transmitted in interstate commerce, (2) containing a threat to injure another, and (3) for the purpose of issuing a threat or with knowledge the communication would be viewed as a threat. *See* 38 F.4th at 669. Thus, the Indictment contains all of the elements of the charged offense.

The Indictment also fairly informs Mr. Ramirez of the charge against which he must defend himself and alleges enough information so that he could plead double jeopardy as a bar to future prosecution. Mr. Ramirez has not argued otherwise. Under *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the government cannot prosecute for separate offenses unless each offense has at least one different element. Because the Indictment alleges all of the elements of the offense, as well as the specific threats Mr. Ramirez is charged with making, Mr. Ramirez could plead double jeopardy if charged in the future with making the same communications.

**The First Amendment and "True Threats"**

Mr. Ramirez's more nuanced argument is that the Indictment fails to state an offense because the alleged communications "cannot, under any reasonable construction, be understood to communicate a threat to injure." (Def.'s Mot. Dismiss at 5.) Therefore, he contends, the communications quoted in the Indictment cannot violate 18 U.S.C. § 875(c) as a matter of law.

Section 875(c) regulates speech and therefore implicates the First Amendment. "True threats," however, are outside the First Amendment's protection. *Virginia v. Black*, 538 U.S. 343, 359 (2003). A "true threat" is "a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *Leveke*, 38 F.4th at 668 (quoting *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc)).

In most cases, "whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact." *United States v. Stock*, 728 F.3d 287, 298 (3d Cir.

4

2013) (cleaned up)[2]; *see United States v. Floyd*, 458 F.3d 844, 848–49 (8th Cir. 2006) (discussing 18 U.S.C. § 876, a companion statute to § 875, and explaining that "[t]he district court's duty in this kind of case is to be the evidentiary gatekeeper . . . . The district court does not decide that a particular communication is a threat as a matter of law, but whether there is sufficient evidence for a jury to decide that a reasonable recipient would interpret it as a threat."); *see also Brandy v. City of St. Louis*, 75 F.4th 908, 915 (8th Cir. 2023) ("In the absence of unusual facts though, the question whether a statement amounts to a true threat is a question generally left to a jury.").

Some cases are so clear, however, that the issue can be decided as a matter of law. *Stock*, 728 F.3d at 298 (citation omitted). "If there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999). Mr. Ramirez argues that this case is a clear case, and there is no question that the alleged communications do not communicate a threat to injure.

*United States v. Alkhabaz*, 104 F.3d 1492, 1496 (6th Cir. 1997) (abrogated in part on other grounds), which is cited in support by Mr. Ramirez, illustrates just how clear a case must be to warrant pretrial dismissal. The communications in *Alkhabaz* were email messages exchanged between two individuals that mutually expressed a sexual interest in violence against females. *Id.* The Sixth Circuit Court of Appeals found that the purpose of the communications was to "foster a friendship based on shared sexual fantasies," not to

---

[2] Although not an Eighth Circuit case, *Stock* was cited by both the prosecution and the defense in the briefing on this motion.

have some effect through intimidation,[3] and thus were not communications containing a threat under § 875(c). *Id.* Dismissal of the indictment was therefore appropriate. *Id.* at 1493. Mr. Ramirez does not equate the communications in *Alkhabaz* to the communications in this case, nor could he. For there is no reasonable construction under which it could be said that the purpose of the alleged communications by Mr. Ramirez was to foster a friendship with Victim A. The communications in *Alkhabaz* are nothing like the communications here, and *Alkhabaz* does not serve to show that this is a clear case for dismissal before trial.

Most of the cases cited as authority by Mr. Ramirez were decided after the close of the government's case and not as pretrial motions. This matters because a fully-developed factual record about the context of the communications at issue in those cases and the totality of the circumstances in which the communications were made were critical considerations to the deciding courts.

In *United States v. Barcley*, for example, the defendant sought to dismiss the indictment at the close of the government's case. *See* 452 F.2d 930, 931 (8th Cir. 1971). The defendant was charged under § 875(c) with sending threatening letters to his former attorney. *Id.* The evidence introduced at trial included the language used in the letters, as well as the strained attorney-client relationship, the client's belief that the attorney had violated ethical rules, and the lawyer's lack of fear after reading the letters. *See id.* at 932–

---

[3] *Alkhabaz* held that to constitute a threat under § 875(c), a reasonable person must both "take the statement as a serious expression of an intention to inflict bodily harm" and "perceive such expression as being communicated to effect some change or achieve some goal through intimidation." 104 F.3d at 1495. The intimidation requirement was later abrogated. *United States v. Doggart*, 906 F.3d 506, 512 (6th Cir. 2018).

34. Considering the context, the court found that the letters did not clearly convey a threat of injury, and the communications were not a threat. *Id.* at 934. Most of Mr. Ramirez's other case authority shares the same procedural distinction and contextual rationale. *See, e.g., Watts v. United States*, 394 U.S. 705, 706–08 (1969) (considering trial evidence about the context of the statement and the reaction of the listeners, in addition to the language used, to find that the trial judge should have granted a motion for judgment of acquittal made at the close of the government's case); *United States v. Kirkendoll*, 61 F.4th 1013, 1016–17 (8th Cir. 2023) (summarizing conflicting trial evidence such as testimony, Facebook posts, Snapchat messages, and a statement to the FBI that the jury considered in convicting the defendant of transmitting threats in interstate commerce); *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013) (describing trial evidence of the context of the statements and the totality of the circumstances in which they were made); *United States v. Dierks*, 978 F.3d 585, 589 (8th Cir. 2020) (describing trial evidence of other tweets the defendant made around the same time as the charged tweets); *United States v. Bellrichard*, 779 F. Supp. 454, 458–60 (D. Minn. 1991) (considering trial evidence about the context of the communication in granting a motion for judgment of acquittal), *aff'd*, 994 F.2d 1318 (8th Cir. 1993). Because of the detailed factual record developed during trial, these cases do not provide persuasive support for Mr. Ramirez's position.

The Eighth Circuit has identified the following factors as relevant to a factfinder's determination of whether a reasonable recipient would have interpreted a communication as conveying an intent to harm or cause injury to another:

1) the reaction of those who heard the alleged threat; 2) whether the threat was conditional; 3) whether the person who made the alleged threat communicated it directly to the object of the threat; 4) whether the speaker had a history of making threats against the person purportedly threatened; and 5) whether the recipient had a reason to believe that the speaker had a propensity to engage in violence.

*Leveke*, 38 F.4th at 668 (quoting *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 623). Facts relevant to these circumstances and context are not alleged in the Indictment, but would be introduced in the form of evidence at trial. Notwithstanding Mr. Ramirez's claim that "[t]his case does not turn on disputed facts" (Def.'s Mot. Dismiss at 2), both parties describe evidence of disputed facts in their briefs, which demonstrates to the Court that context and circumstances are relevant here. For example, Mr. Ramirez describes the events of January 14, 2026—the day before the communications—when federal agents responded to a shooting in north Minneapolis, a large crowd gathered, and agents left the area due to safety concerns. (*Id.* at 3.) During the subsequent unrest, information about the federal agents such as their phone numbers and home addresses was stolen, and was later disseminated online. (*Id.*) The agents and their family members received numerous communications, some of which contained explicit threats of violence, one of which referenced a firebomb, and one of which referred to the California murder statute. (*Id.*) The United States describes similar evidence, and also evidence that FBI-issued weapons were stolen from the agents' vehicles, that Victim A received communications from 23 other senders, and that Mr. Ramirez had a prior history of making threats. (Gov't's Opp'n at 2–4.) The Court makes no findings about the admissibility of any such evidence but recounts

8

it only to illustrate that evidence admitted at trial is necessary to provide context and a complete picture for the alleged communications.

The communications alleged in the Indictment include the messages "Your day will come . . . ."; "I know where your mom lives bro. And your dad. And your kids, buddy."; and "Get home safe and fast." Mr. Ramirez has asked the Court to find that there is no reasonable construction under which these communications could constitute a threat to injure. The Court finds otherwise. A reasonable person could interpret the communications as a serious expression of an intention to inflict bodily harm or cause injury to another. To make this determination, the communications should be considered in context and in the totality of the circumstances in which the communications were made.

**The Required Mental State**

Mr. Ramirez argues that the Indictment fails to state an offense because it does not "plausibly allege" sufficient facts from which the required mental state could be inferred. (Def.'s Mot. Dismiss at 14.) This argument essentially asks the Court to import the *Twombly/Iqbal* plausibility standard used in civil cases for motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6).[4] The Court declines to do so. The Indictment alleges that Mr. Ramirez acted "with the purpose of issuing a threat" and "with knowledge that the communication would be viewed as a threat." These allegations do not need to be

---

[4] Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a pleading fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be facially plausible, the party must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

supported by any factual content in the Indictment. It is sufficient that they reflect the elements of § 875(c) and fairly inform Mr. Ramirez of the charge against him.

**Recommendation**

The Court finds that a reasonable jury could conclude that the communications alleged in the Indictment were a threat to injure another person and that the Indictment adequately alleges Mr. Ramirez's mental state. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Jose Alberto Ramirez's Motion to Dismiss Indictment (Dkt. No. 33) be **DENIED**.


**IT IS FURTHER ORDERED** that the United States' Motion for Discovery (Dkt. No. 23) is **DENIED AS MOOT**.


Dated: May 4, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge


**NOTICE**

**Filing Objections:** The Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).