IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

JOSE ALBERTO RAMIREZ,

*Defendant*.

Case No. 0:26-cr-00042-DWF-JFD

**DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION**

## INTRODUCTION

Defendant Jose Alberto Ramirez respectfully objects to the Report and Recommendation dated May 4, 2026 (the "R&R"), which recommends denying Defendant's Motion to Dismiss Indictment.

The R&R cannot be reconciled with the Indictment it sustains. First, it invokes the statutory-tracking rule at a level of abstraction that avoids the Indictment's text. The Indictment quotes the complete communications alleged to be criminal. The question is whether those words state a § 875(c) offense, not whether the Indictment also recites "threat to injure." A statutory label is not self-validating when the Indictment supplies the words that must make the label true.

Second, the R&R treats unalleged background as a substitute for a threat in the charged communications. The Indictment quotes the communications verbatim, and the background the R&R cites does not alter what they say. Arrest-day conduct, uncharged prior allegations, and messages sent by others are not part of Mr. Ramirez's charged communications and are not tied to his knowledge, adoption, invocation, or conduct. They cannot transform words that do not threaten injury into words that do.

1

Third, the R&R treats a facial sufficiency challenge as a jury question merely because the government says context will matter at trial. But Mr. Ramirez accepts the charged communications as pleaded, and the Indictment quotes them in full. The Court can determine, without resolving any factual dispute, whether those communications contain a threat to injure. Rule 12 permits that inquiry where the issue is legal and the relevant words are fixed by the Indictment. The government's anticipated proof cannot avoid the threshold question whether the charged communications state an offense.

The true-threat inquiry is not a binary exercise in which speech is either innocuous or felonious. Speech directed at a federal official does not carry a lower criminal threshold. A communication can be hostile, irrational, obsessive, ominous, and frightening without being a threat to injure. The government has identified no comparable case holding that communications lacking discernible violence, bodily harm, or injury are sufficient under § 875(c). That distinction is not a technicality; it is the constitutional boundary between protected speech and imprisonment. The R&R crosses that boundary by accepting the government's framing that facts not contained in, incorporated into, or invoked by Mr. Ramirez's charged communications can supply the threat to injure.

The Court should sustain Mr. Ramirez's objections, reject the R&R, and dismiss the Indictment.

## STANDARD OF REVIEW

A district judge reviews de novo any portion of an R&R to which a party properly objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. LR 72.2(b)(3); *United States v. Lothridge*, 324 F.3d 599, 600–01 (8th Cir. 2003). That review requires the district

court to conduct "a de novo review of the record related to the objections." *Gonzales-Perez v. Harper,* 241 F.3d 633, 636 (8th Cir. 2001). The district judge may accept, reject, or modify the recommendation, receive further evidence, or return the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

## SPECIFIC OBJECTIONS

**1. The R&R Errs in Concluding That Statutory Tracking Is Sufficient Where the Indictment Pleads the Complete Communications Alleged to Constitute the Offense.**

Mr. Ramirez objects to the R&R's conclusion that the Indictment is sufficient because it tracks the language of 18 U.S.C. § 875(c) and recites the statutory elements. *See* R&R at 3–4, 9–10. Mr. Ramirez does not dispute the familiar rule that an indictment ordinarily is sufficient if it tracks the statutory language, sets forth the elements of the offense, and permits the defendant to later plead double jeopardy. *Hamling v. United States*, 418 U.S. 87, 117 (1974). But that general rule does not answer the narrower question presented here: whether an indictment that pleads the complete communications alleged to constitute the offense states an offense when those communications, accepted as true, do not contain a threat to injure.

The government pleaded the charged communications in full. Those communications are not surplusage or background narrative; they are the very words alleged to constitute the offense. The Court therefore need not evaluate the Indictment as though it consisted only of a generic statutory recitation. It may consider whether the communications actually alleged are legally capable of satisfying § 875(c)'s threat-to-injure requirement.

3

That principle is well established. Although statutory tracking is often sufficient, Rule 12 permits dismissal where "the specific facts alleged in the charging document do not amount to a criminal offense." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002); *see also United States v. Stock*, 728 F.3d 287, 291–92 (3d Cir. 2013) (reviewing Rule 12 challenge arguing that charged statement was not a "threat" under § 875(c)); *United States v. Steffen*, 687 F.3d 1104, 1107 n.2, 1109–17 (8th Cir. 2012) (accepting indictment's factual allegations as true, without reference to allegations outside the indictment, and affirming dismissal where pleaded facts did not sufficiently allege a scheme to defraud). Thus, when the indictment pleads the operative facts, the Court may determine whether the facts the government actually alleged state the offense charged.

So too here. The Indictment recites the phrase "threat to injure," but it also quotes the three communications alleged to supply that element. Those quoted communications are the charge; they cannot be treated as legally irrelevant. The sufficiency question is not whether the Indictment invokes § 875(c), but whether the communications pleaded to satisfy § 875(c) contain the threat the statute requires. If they do not, the statutory phrase cannot carry the charge.

Section 875(c) requires a communication containing a threat to injure. An indictment does not satisfy that requirement by using the phrase while pleading communications that do not contain one. The R&R's analysis treats the statutory recitation as dispositive and the quoted words as immaterial. That gets the inquiry backwards. Formulaic language cannot supply statutory content the pleaded communications lack.

Because the R&R treated statutory tracking as sufficient without addressing whether the pleaded communications themselves contain a threat to injure, the R&R applied the wrong analysis. The Court should sustain this objection, reject the R&R's conclusion that statutory tracking is sufficient in these circumstances, and dismiss the Indictment for failure to state an offense.

### 2. The R&R Errs in Concluding That the Indictment Alleges a Threat to Injure Victim A and Victim A's Family Members.

Mr. Ramirez objects to the R&R's conclusion that the Indictment alleges communications "contain[ing] a threat to injure Victim A and Victim A's family members." *See* R&R at 2. The charged communications allegedly state, "your day will come," say that Mr. Ramirez knows where the recipient's family lives, and tell the recipient to get home "safe and fast." Those communications may be read as ominous, intrusive, or unsettling. But they do not state that Mr. Ramirez will injure anyone, identify any act of unlawful violence or bodily harm, or communicate a serious expression of intent to inflict injury. Section 875(c) requires a threat to injure, not merely ambiguity, fear, or alarm. The R&R's contrary conclusion collapses that distinction.

A true threat is a "serious expression of an intent to commit an act of unlawful violence to a particular individual or group." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The Eighth Circuit asks whether a reasonable recipient would interpret the communication as a serious expression of intent to harm or cause injury. *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 624, 627 (8th Cir. 2002) (en banc). However phrased, the

communication must convey threatened violence, harm, or injury. These communications do not.

The government has identified no analogous case, and the R&R offers none, in which communications that do not state, describe, or communicate threatened violence or bodily harm were held sufficient under § 875(c). The R&R's cases confirm the point. In *Floyd*, "Be Aware Be Fair" was not treated as threatening in isolation; it was paired with an article about the murder of Judge Joan Lefkow's family. *Floyd*, 458 F.3d at 846–49. The violent meaning thus came from the defendant's own communication. Here, Mr. Ramirez is not alleged to have paired his words with any violent article, symbol, plan, weapon, or act.

The same distinction runs through the R&R's remaining authorities. In *Leveke*, the defendant stated that he was "angry enough to pull a mass shooting," asserted that the Second Amendment exists "so we can kill politicians," and said the legislature "deserves a violent response." *Leveke*, 38 F.4th at 666–69. In *Dierks*, the defendant stated, "I'll f u up seriously . . . U have no idea . . . U think I'm playin'" in reference to a federal congressperson. *Dierks*, 978 F.3d at 587–88. In *Brandy*, the defendant said, "I'll f*** you up," during an escalating face-to-face confrontation with law enforcement. *Brandy*, 75 F.4th at 914–15. In *Doggart*, the defendant said Muslim individuals "had to be killed," that buildings "need[ed] to be burnt down," and discussed planning, methods, and timing. *Doggart*, 906 F.3d at 510–12. In *Stock*, the defendant described crushing the victim with his truck, dragging him, and drowning him. *Stock*, 728 F.3d at 287, 291. In *Viefhaus*, the defendant warned that bombs would be activated in fifteen pre-selected cities. *Viefhaus*,

6

168 F.3d at 394–95. In *Pulaski*, the writing detailed plans to "rape, sodomize, and murder" a classmate. 306 F.3d at 619, 627. Whatever else may be said about those cases, each involved threatened violence or bodily harm discernible from the communication itself.[1]

That is what is missing here. The government asks the Court to infer an unspecified threat of injury from communications that do not state, describe, or identify violence, bodily harm, or injury. Section 875(c) requires a communication containing a threat to injure. That requirement marks the line between protected speech and a federal felony. It demands a serious expression of intent to inflict injury—not ambient hostility, fear, or speculation about violence the charged communications do not express.

Because the Indictment quotes Mr. Ramirez's communications in full and those communications do not contain a threat to injure, the Court should sustain this objection, reject the R&R's contrary conclusion, and dismiss the Indictment for failure to state an offense under Rule 12(b)(3)(B)(v).

---

[1] The government's additional authorities, though not relied on by the R&R, confirm the same point. Each involved words or defendant-tied context conveying violence, injury, or imminent violent action. *See*, *e.g.*, *United States v. Saul*, No. 8:20CR76, 2020 WL 2124853, at *1, *4 (D. Neb. May 20, 2020) ("Some1 borrow me a gun and a couple hundred rounds of ammo"; "Everybody getting shot at least once"); *United States v. Clemens*, 738 F.3d 1, 4–5 (1st Cir. 2013) ("Pow! Bang! Splat!"; "someone's going to get hurt REAL BAD"); *United States v. Abdulkadir*, No. 15-cr-155, 2016 WL 659711, at *1–2 (D. Minn. Feb. 18, 2016) (explicit threats to murder federal judges and officers); *United States v. Parr*, 545 F.3d 491, 495–96 (7th Cir. 2008) (discussion of explosives, detonation, and maximizing casualties); *United States v. Turner*, 842 F.3d 602, 605–06 (8th Cir. 2016) (identifying federal judges, publishing personal information, and advocating violence against them); *United States v. Cessor*, No. 8:20CR87, 2020 WL 4436382, at *2 (D. Neb. Aug. 3, 2020) (defendant "on his way" to "take care of President Trump" in context suggesting imminent action); *United States v. Wheeler*, 776 F.3d 736, 739–40 (10th Cir. 2015) ("kill cops," "hunt them down," and "kill their entire bloodlines").

### 3.   The R&R Errs by Relying on Unalleged Background to Supply a Threat the Charged Communications Do Not Contain.

Mr. Ramirez objects to the R&R's reliance on alleged contextual facts outside the Indictment to conclude that the charged communications could constitute a true threat. *See* R&R at 8–10. The issue is not whether context can ever matter. It is whether the background invoked here alters the legal content of Mr. Ramirez's charged words. It does not. Section 875(c) requires a communication containing a threat to injure. Context may explain a defendant's words; it may not supply a threat from whole cloth.

The R&R's own analysis shows the problem. It acknowledges that the supposed contextual facts are "not alleged in the Indictment," would have to be "introduced in the form of evidence at trial," and have not been found admissible. *See* R&R at 8–9. Yet the R&R relies on those same uncharged and untested facts to conclude that the communications could be viewed as threatening. That is not a sufficiency analysis of the Indictment. It is an invitation to postpone the missing element until trial. Evidence not alleged, not admitted, and not found admissible cannot cure an indictment that does not charge a communication containing a threat to injure.

The Indictment itself alleges only temporal context: Mr. Ramirez sent three quoted messages within approximately two minutes, and Victim A received them. That is the full extent of the conduct charged as a threat. Nothing in the Indictment alleges that Mr. Ramirez knew of, adopted, invoked, or acted in relation to the broader background the government now emphasizes. That extra-indictment background cannot cure the absence of a threat in the charged communications.

The government devotes substantial attention to the frightening backdrop against which the communications were sent, but it still must identify a threat by Mr. Ramirez in the charged communications. Section 875(c) criminalizes the defendant's communication containing a threat to injure—not an invitation to imagine one. The question is not whether the surrounding circumstances were alarming, or whether others contemporaneously referenced firebombs and murder statutes. The question is whether Mr. Ramirez's charged words communicated a serious expression of intent to inflict unlawful violence or bodily harm. They did not.

*Barcley* illustrates the proper use of context. There, the defendant's own letters contained language with a discernible implication of injury: he told his former attorney that the attorney would be "the first to go," which could be understood to mean the attorney would be eliminated. *Barcley*, 452 F.2d at 932–34. Yet the Eighth Circuit held the letters were not threats after considering the parties' relationship, the nature of the dispute, and the recipient's reaction. The point is not that context is irrelevant. The point is that *Barcley* used context to evaluate words that already suggested injury, and even then held there was no threat. It does not support the opposite move here: using background circumstances to supply injury where Mr. Ramirez's charged words contain none.

The R&R's distinction of *Barcley* based on Victim A's alleged fear does not carry the point. Fear may explain why a communication was taken seriously; it is not the statutory element. Even assuming Victim A was afraid, fear arising from broader circumstances, other senders' explicit threats, arrest-day conduct, or uncharged prior allegations cannot make Mr. Ramirez's charged words a threat to injure. Section 875(c) requires a threat

communicated by Mr. Ramirez's charged words, not one supplied by the recipient's reaction or the surrounding atmosphere.

The R&R appears to adopt the government's context argument, but the cases cited for that argument are inapposite. Each involved communications or conduct that already conveyed discernible violence. See *United States v. Ivers*, 967 F.3d 709, 718–19 (8th Cir. 2020) (defendant referenced killing the judge and described "different ways [he] planned to kill her"); *United States v. Bellrichard*, 994 F.2d 1318, 1323 (8th Cir. 1993) (communications included explicit threats to kill and bomb identified individuals); *United States v. Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000) (defendants' own conduct signaled a bombing threat in close temporal proximity to the Oklahoma City bombing). Those cases used context to evaluate violent words or violent conduct. They did not permit context to create violence absent from the defendant's communication. Here, no charged word, act, knowledge, adoption, or invocation by Mr. Ramirez gives violent or injurious content to the charged communications.

The mens rea requirement fails for the same reason. Section 875(c) requires a culpable mental state as to the threatening character of the communication. *Elonis*, 575 U.S. at 737–40. The First Amendment requires, at minimum, conscious disregard of a substantial risk that the communication would be viewed as threatening. *Counterman*, 600 U.S. at 66, 79. Background not tied to Mr. Ramirez's words, knowledge, adoption, invocation, or conduct cannot make his words threatening. Nor can it show that he intended, knew, or consciously disregarded a substantial risk that his words would be understood as threatening.

10

For these reasons, the Court should sustain this objection, reject the R&R's reliance on unalleged background to supply a threat the charged communications do not contain, and dismiss the Indictment for failure to state an offense under Rule 12(b)(3)(B)(v).

### 4. The R&R Errs by Recasting Defendant's Rule 7 Challenge as a *Twombly/Iqbal* Argument.

Mr. Ramirez objects to the R&R's conclusion that his mens rea argument improperly imports *Twombly* and *Iqbal* into criminal practice. *See* R&R at 9. That is not his argument. Mr. Ramirez does not ask the Court to apply civil plausibility pleading or require the government to plead additional facts. His point is that the Indictment quotes the communications alleged to constitute the offense, and those communications do not contain a threat to injure. A conclusory mens rea allegation cannot supply the threatening character that the charged communications lack. Mental state attaches to the threatening character of a communication; it does not create that character.

The R&R's *Twombly/Iqbal* analysis therefore answers the wrong objection. The issue is not whether an indictment may ordinarily allege mens rea in statutory terms. It may. The issue is whether such an allegation can cure the absence of a communication containing a threat to injure. It cannot. Section 875(c) requires both a culpable mental state and a communication containing a threat to injure. Alleging the former does not plead the latter.

The government pleaded the operative communications in full. If those communications do not contain a threat to injure, a conclusory mens rea allegation cannot transform them into one. The Court should sustain this objection, reject the R&R's

11

characterization of Mr. Ramirez's argument as a *Twombly/Iqbal* challenge, and dismiss the Indictment for failure to state an offense.

**5.   The R&R Wrongly Treats a Legal Sufficiency Question as an Issue for Trial.**

Mr. Ramirez objects to the R&R's conclusion that whether the charged communications constitute a true threat cannot be resolved pretrial and must be left for the trier of fact. *See* R&R at 4–5, 8–10. This motion does not ask the Court to decide whether the government can prove intent, recipient fear, or surrounding circumstances at trial. It asks whether the communications alleged in the Indictment state the threat-to-injure element of § 875(c).

Rule 12 permits pretrial resolution where "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025). This is such a case. A trial may resolve disputed facts; it is not necessary to read the words the Indictment already quotes. The government pleaded the charged communications in full. Nothing about trial will change those words or make them sufficient if they do not contain a threat to injure.

The R&R discounted Mr. Ramirez's cited authorities because many were decided after trial rather than on pretrial motions. *See* R&R at 6–8. But Mr. Ramirez does not rely on *Kirkendoll*, *Nicklas*, or *Bellrichard* for the Rule 12 standard. He relies on them for the substantive boundary between true threats and nonthreatening speech. Their procedural posture may explain why those courts had fuller records; it does not make their true-threat analysis irrelevant to whether the words charged here fall within § 875(c).

The R&R overlooks the distinction that matters. Some true-threat questions must await trial because the charged words convey violence or injury and the parties dispute context, meaning, or intent. This is not that case. Here, the communications alleged in the Indictment contain no discernible violence or threatened injury, and the Indictment alleges no context tied to Mr. Ramirez's words that gives them violent meaning. The motion therefore presents a legal question: whether, accepting the Indictment's allegations as true, the charged words state a "threat to injure" under § 875(c). They do not.

Rule 12 does not require Mr. Ramirez to stand trial on an Indictment that pleads the communications in full and thereby presents the sufficiency question on its face. For these reasons, the Court should sustain this objection, reject the R&R's conclusion that the issue must await trial, and dismiss the Indictment for failure to state an offense under § 875(c).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court sustain his objections, reject the R&R's recommendation that the motion to dismiss be denied, grant Defendant's Motion to Dismiss Indictment, and dismiss the Indictment.

Dated: May 18, 2026

Respectfully submitted,

GAD CRIMINAL DEFENSE, PLLC

/s/ ***Sarah Gad***
Sarah R. Gad
Attorney Reg. No. 0403328
8 E 25th Street
Minneapolis, MN 55404
Telephone: (612) 412-1710
sarah@gadlawoffice.com

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the word-count and type-size limitations of D. Minn. LR 72.2(c). This filing contains 3,452 words, including headings, footnotes, and quotations, but excluding the caption, signature block, and this certificate of compliance.

I further certify that this filing was prepared using Microsoft Word 365, in 13-point Times New Roman font and that the word count above was generated by Microsoft Word 365.

Dated: May 18, 2026

Respectfully submitted,

GAD CRIMINAL DEFENSE, PLLC

/s/ *Sarah Gad*

Sarah R. Gad
Attorney Reg. No. 0403328
8 E 25th Street
Minneapolis, MN 55404
Telephone: (612) 412-1710
sarah@gadlawoffice.com