UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-42 (DWF)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | PLEA AGREEMENT AND |
| v. | ) | SENTENCING STIPULATIONS |
| | ) | |
| JOSE ALBERTO RAMIREZ, | ) | |
| a/k/a JOSE ALBERTO RAMIREZ, JR., | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America and the defendant, JOSE ALBERTO RAMIREZ,

agree to resolve this case on the following terms and conditions. This plea agreement

binds only the defendant and the United States Attorney's Office for the District of

Minnesota. It does not bind any other United States Attorney's Office or any other

federal or state agency.

1.     **Charges**. The defendant agrees to plead guilty to Count 1 of the

Indictment charging him with Interstate Transmission of a Threat to Injure the

Person of Another, in violation of Title 18, United States Code, Section 875(c). The

defendant fully understands the nature and elements of the crime to which he is

pleading guilty pursuant to this Plea Agreement.

2.     **Factual Basis**. In pleading guilty, the defendant admits the following

facts and agrees that these facts establish his guilt beyond a reasonable doubt and

constitute relevant conduct pursuant to the United States Sentencing Guidelines:

    a.     On or about January 14, 2026, a crowd of demonstrators,
gathered in the area of Lyndale Avenue between 23rd and 24th Avenues in
Minneapolis to protest an immigration enforcement action during which an

immigration agent discharged his weapon. FBI Agents responded to the scene in government-owned vehicles to investigate the shooting, but were not involved in the immigration enforcement action. The crowd grew unruly and violent, forcing FBI Agents to abandon the scene and leave two government-owned vehicles at the scene. The crowd vandalized and caused significant damage to the FBI vehicles, resulting in their total loss.

b.      As a result of the vehicles being vandalized, FBI-issued equipment and materials, including FBI IDs, building access badges, and various personal and FBI documents, were stolen from the ransacked vehicles. Some stolen documents were driver's licenses and rosters with employees' phone numbers, email addresses, and other personal information. Much of the compromised information was posted publicly online via social media. Soon thereafter, several FBI Agents and employees, including Victim A, the Minneapolis FBI Special Agent victim in this matter, began receiving multiple harassing and threatening phone calls, texts, and emails.

c.      The defendant obtained some of the personal information noted above from posts on social media, including that of Victim A, and on or about January 15, 2026, between about 6:01 a.m. and 6:03 a.m., the defendant knowingly used his cellular phone in Illinois, and left one voicemail message on, and sent two text messages to, Victim A's work cellphone in Minnesota, as follows:

| Time | Communication |
| --- | --- |
| 6:01 a.m. | *What up [Victim A's First Name]? You bitch ass nigga. Your day will come nigga. Bitch ass nigga.* |
| 6:02 a.m. | *[Victim A's Full Name], Yahahahahhahaha bitch ass nigga, I know where your mom lives bro. And your dad. And your kids buddy.* |
| 6:03 a.m. | *Get home safe and fast.* |

d.      The defendant admits and agrees that, by using his cellular phone in Illinois to leave the threatening voicemail message and to send the threatening texts to Victim A's work cellphone in Minnesota, he transmitted those communications in interstate commerce.

e.      The defendant also admits and agrees that he knowingly and intentionally left the threatening voicemail message on, and sent the threatening text messages to, Victim A's work cellphone with the purpose of issuing a threat, or with knowledge that the communications would be viewed as a threat, or consciously disregarding a substantial and unjustifiable risk that the communications would be viewed as a threat.

3.     **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the rights to have any pending motions resolved by the Court and to file any additional pre-trial motions in this case. The defendant further agrees that, by pleading guilty, he is knowingly and voluntarily withdrawing any motions previously filed.

4.     **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent his. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and nevertheless still wants to plead guilty in accord with the terms of this plea agreement.

6. **Statutory Penalties**. The parties agree that Count 1 carries the following statutory penalties:

    a. a maximum term of 5 years' imprisonment, a Class D felony. (18 U.S.C. §§ 875(c) and 3559(a)(4));

    b. a supervised-release term of not more than 3 years. (18 U.S.C. §§ 3559(a)(4) and 3583(b)(2));

    c. a fine of up to $250,000. (18 U.S.C. §§ 875(c) and 3571(b)(3)); and

    d. a mandatory special assessment of $100. (18 U.S.C. § 3013(a)(2)(A)).

7. **Guidelines Calculations**. The parties acknowledge the defendant will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines. The parties also acknowledge the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence, and the parties stipulate to the following

Guidelines calculations. Notwithstanding the following stipulations, nothing in this plea agreement prevents the parties from bringing to the attention of the Court and the Probation Office all information in their possession regarding the offense(s), including relevant conduct, and the defendant's background.

    a. **Base Offense Level**. The parties agree that the base offense level is 12. USSG § 2A6.1(a)(1).

    b. **Specific Offense Characteristics**. The parties agree that because the offense involved more than two threats, the base offense level is increased by 2 levels. USSG § 2A6.1(b)(2)(A).

The parties agree that no other specific offense characteristics or adjustments apply.

    c. **Chapter Three Adjustments**. The parties agree that, because the victim is a government officer or employee, the offense of conviction was motivated by such status, and the applicable Chapter Two Guideline is from Chapter Two, Part A (namely § 2A2.3), the base offense level is increased by 6 levels. USSG §§ 3A1.2(a)(1)(A), (a)(2), and (b).

The parties agree that other than acceptance of responsibility, no other Chapter Three adjustments apply.

    d. **Acceptance of Responsibility**. The United States agrees to recommend that the defendant receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the United States agrees to recommend that the defendant receive an additional one-level reduction pursuant to USSG § 3E1.1(b). Whether these reductions are granted shall be determined by the Court in its discretion. The defendant understands and agrees, however, that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change-of-plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant does not engage in any conduct inconsistent with acceptance of responsibility before or at the time of sentencing.

Nothing in this plea agreement, however, limits the right of the government, pursuant to USSG § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should

the defendant engage in any conduct inconsistent with acceptance of responsibility.

After applying all adjustments, the <u>adjusted total offense level is **17 (12+2+6-3)**</u>.

e. **Criminal History Category**. The parties believe that at the time of sentencing the defendant's Criminal History Category is <u>III</u>. USSG § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within their criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on their true criminal history category, and the defendant will not be permitted to withdraw from this Plea Agreement. USSG § 4A1.1.

f. **Guidelines Range**. If the adjusted total offense level is <u>17</u>, and the criminal history category is <u>III</u>, the advisory Guidelines range is <u>30 to 37 months' imprisonment</u>.

g. **Supervised Release**. The Guidelines provide for a term of supervised release of at least 1 year but not more than 3 years. USSG § 5D1.2(a)(2).

h. **Fine Range**. If the adjusted total offense level is 17, the applicable fine range is $10,000 to $95,000. USSG § 5E1.2(c)(3).

i. **Special Assessments**. The Guidelines require payment of a special assessment in the amount of $100.00 for each count, for a total of $100. USSG § 5E1.3. The defendant understands and agrees that this special assessment is due and payable at the time of sentencing.

8. **Discretion of the Court**. The foregoing stipulations bind the parties but not the Court. The parties understand the Sentencing Guidelines are advisory and their application is a matter falling solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the

applicable Guidelines. If the Court determines the applicable Guidelines calculations and/or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.      **Sentencing Recommendation and Departures**. The parties agree to recommend a sentence of time-served at the time of sentencing, with conditions to include a mental-health assessment and follow all recommendations, including any recommended treatment plan, limits on computer usage and/or internet access and possible installation of monitoring software as determined by the United States Probation Office, and no direct/indirect contact with the victim and/or the victim's family, among other things. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea or withdraw from this plea agreement.

10.     **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* USSG §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11.    **Waiver of Freedom of Information Act and Privacy Act**.    In exchange for the concessions of the United States made herein, the defendant agrees to waive all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

12.    **Waiver of Appeal and Postconviction Petition**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statute to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment greater than 30 months' imprisonment.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this plea agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the

offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The United States agrees to waive its right to appeal any sentence imposed.

13.    **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that he has read the entire agreement and has reviewed every part of it with his counsel; (b) that he fully understands this plea agreement; (c) that he is pleading guilty because he is in fact guilty of committing the crime(s) to which he is pleading guilty; (d) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (e) that he is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (f) that he has entered into this plea agreement freely, knowingly, and voluntarily; and, (g) that his decision to plead guilty in accord

with the terms and conditions of this plea agreement is not the result of any threats

or coercion directed at his or anyone connected with his.

Dated: _August 6, 2026_

DANIEL N. ROSEN
United States Attorney

_____

BY: BENJAMIN BEJAR
Attorney ID # 0351131
Assistant United States Attorney
District of Minnesota

Dated: _8/6/26_ _____

JOSE ALBERTO RAMIREZ
Defendant

Dated: _8/6/26_ _____

SARAH R. GAD, Esq.
Attorney ID # 0403328
Attorney for Defendant